No. 41,846

TIMOTHY VICTOR REICHENBERGER, *Appellant,* v. RAYMOND HENRY
ROSENHAGEN and HENRY ROSENHAGEN, *Appellees.*

(357 P. 2d 776)

Opinion filed December 10, 1960.

*Alan B. Phares,* of Wichita, argued the cause, and *Pat Warnick,* of Wichita, was with him on the briefs for the appellant.

*Robert C. Foulston,* of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes* and *Robert L. Howard,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

FATZER, J.: The action was to recover for personal injuries sustained in the collision of two automobiles at an intersection of country roads, and the sole question presented is whether the trial court erred in sustaining the defendants' demurrer to the plaintiff's evidence upon the ground that the plaintiff's admissions showed him guilty of contributory negligence as a matter of law barring his recovery. No other point is presented.

At approximately 1:00 a. m. on the morning of May 29, 1955, the plaintiff, accompanied by a male friend, was driving his Pontiac automobile north on his way home from a wedding dance at St. Joe Ast in southeast Reno County. He approached and entered the intersection of an east-west road. Both roads were typical graveled country roads and the surface was dry. The intersection is about a mile and a half west of St. Joe Ast. As the plaintiff's automobile entered the intersection it was struck about dead-center on the left side by a Chevrolet automobile driven by the defendant

Raymond Henry Rosenhagen who was traveling east on the east-west road. The plaintiff's car was traveling 30 to 40 miles per hour and the defendants' car was traveling 70 to 80 miles per hour. Both cars were hurled through the air coming to rest close together about 37 feet northeast of the intersection. There were no stop, slow or warning signs at the intersection, and the present 70 mile per hour speed limit had not yet become effective (G. S. 1959 Supp., 8-532).

The terrain in the vicinity of the intersection was "hilly" so that both roads had dips and hills. Northbound traffic approaches the intersection on an upgrade and the eastbound traffic approaches on a downgrade. There was an embankment on the west side of the north-south road south of the intersection. Wheat or barley was growing in a field immediately west of the embankment, which was 12 to 24 inches high. When the plaintiff was about a quarter of a mile south of the intersection he looked to his left, or west, and saw a flash of light which disappeared. He did not know whether it was a car, a house, or a search light in Hutchinson. After seeing the flash of light the plaintiff continued toward the intersection. He looked to the right and thought he saw lights at St. Joe Ast, but he was not sure. The plaintiff again looked to the left and saw no lights. When he was approximately twelve feet from the intersection he looked left and saw a flash of light, and as he entered the intersection he saw the defendants' car for the first time. When the plaintiff discovered his peril it was too late for him to stop. The plaintiff had not traveled the north-south road before but had traveled the east-west road on two or three occasions. While he knew there was an intersection ahead, he did not know its location. The embankment along the west side of the road continues to within five or ten feet of the intersection, and the evidence was that with a growing crop 12 to 24 inches high in the field west of the embankment, a driver 150 feet south of the intersection was prevented from seeing a vehicle 200 or 300 feet down the east-west road. By the same token, a driver on the east-west road at that same distance was prevented from seeing a car 150 feet south of the intersection on the north-south road.

When ruling upon the defendants' demurrer to the plaintiff's evidence oral remarks of the trial court indicated that while it was of the opinion the question whether the embankment and growing crops kept the plaintiff from seeing the oncoming car was one of

fact for submission to a jury, there was no evidence or favorable inferences of what the plaintiff did in driving along the road and entering the intersection to avoid injury to himself and others and on that point concluded that if a jury found he did nothing in that respect and returned a verdict in his favor the court would be required to set it aside; further, that if a jury found he was not required under the circumstances to do anything to exercise care for his own safety such an answer would also have to be set aside as being contrary to the law.

It would not add to the body of the law of this state to detail the testimony of each of the witnesses, and we are not disposed to labor the numerous negligence cases cited by the parties nor repeat the well-established rule of law applicable to a defendant's demurrer to a plaintiff's evidence involving negligence, proximate cause, and rules of the road. Much time could be spent in reiterating those rules, in commenting upon our many decisions involving this type of action, and in applying or distinguishing them. The ultimate question which we review as one of law is whether the record convicts the plaintiff of contributory negligence as a matter of law barring his recovery. On that point it is sufficient to say the court is of the opinion that under the circumstances which attend, the question was one of fact upon which the minds of reasonable men might differ and should have been submitted to a jury under proper instructions by the trial court. Moreover, the question whether plaintiff's negligence, if any, was a proximate or contributing cause to his injury was likewise a question of fact to be submitted to a jury under proper instructions. Essentially, this was a "fact" case in which a jury under full and proper instructions on all material questions raised by the pleadings and evidence should have made its decision.

A careful examination of the entire record discloses that the trial court erred in sustaining the defendants' demurrer to the plaintiff's evidence, and the judgment must be reversed.

It is so ordered.