No. 42,300

DAVID M. HUGHES, MARTHA M. HUGHES, CAROL A. JORY and DEBORAH A. HUGHES, Trustees, Doing Business under the Trade Name and Style of MULVANE RANCH, by its Agent, DAVID M. HUGHES, *Appellees,* v. FRANK W. ATKINSON and HENRY C. HITCH, a Co-partnership, *Appellants.*

(362 P. 2d 618)

Opinion filed June 10, 1961.

*Wayne Coulson,* of Wichita, argued the cause, and *Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Robert J. Hill, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell, Willard B. Thompson,* and *Hugo T. Wedell* and *Homer V. Gooing,* of Counsel, all of Wichita, were with him on the briefs for the appellants.

*Emmet A. Blaes,* of Wichita, argued the cause, and *John E. Wheeler,* of Marion, *Roetzel Jochems, Robert G. Braden, J. Francis Hesse, James W. Sargent, Stanley E. Wisdom, Vincent L. Bogart, Cecil E. Merkel, John W. Brimer, Harry L. Hobson, Bruce W. Zuercher,* and *Terrance J. Muth,* all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: This was an action to recover a balance alleged to be due the plaintiffs under the terms of a written agistment agreement, whereby they leased the defendants the 11,000 acre Mulvane Ranch, located in Chase and Morris Counties, Kansas, for pasturage purposes and subsequently pastured 2,003 head of defendants' cattle (steers) in such pasture during the 1958 pasture season.

No issue is raised regarding the pleadings. Therefore reference thereto will be brief and the allegations thereof when mentioned, except for one particular, will be highly summarized.

The amended petition, which includes a copy of the contract, contains all allegations required to state a cause of action against the defendants for recovery of the balance of $3,750.74, alleged to be due and payable under the terms of that agreement, for the number of defendants' steers pastured on the Mulvane Ranch during the 1958 season.

The contract attached to the amended petition is important and pertinent portions thereof should be detailed. Limited as indicated, such agreement reads:

"THIS CONTRACT made and entered into March 15, 1958, by and between Mulvane Ranch, by its agent, David M. Hughes (Los Angeles, California), Party of the First Part, and Frank W. Atkinson of Burdick (Morris County), Kansas and Henry C. Hitch of Guymon, Oklahoma, Parties of the Second Part.

WITNESSETH: . . . said parties hereby agree as follows: . . . First Party agrees to lease . . . Second Parties the pasture known as Mulvane Ranch . . . containing Eleven Thousand . . . acres, more or less, for the sum of Forty Thousand . . . Dollars.

". . . Second Parties agree to stock said pasture with not less than Two Thousand . . . steers . . . Second Parties agree to pay . . . First Party at the rate of Twenty . . . Dollars per head for all steers in excess of Two Thousand head so stocked.

". . . Second Parties agree to deliver to . . . First Party between April 24, 1958, and June 1, 1958, said . . . cattle at the stock yards, at Rockland, Kansas, to be pastured by said First Party not later than October 15, 1958.

". . . First Party agrees to receive said cattle at the within named place; to have an abundance of salt at all times; to use every reasonable effort to maintain water, and to return said cattle to Rockland station stock yards, upon the request of said Second Parties, and to load them on cars as furnished. . . . First Party agrees to pay for all cattle that may be lost, strayed, or stolen, at the average net selling price of said cattle, . . . but not for those that die from natural or unavoidable causes, . . .

. . . . . . . . . . . . . . . . . . .

". . . Second Parties agree to pay . . . First Party for pasturing, salting, watering, and caring for said cattle Twenty . . . Dollars per head, or until the amount of Forty Thousand . . . Dollars has been paid and to pay in addition at the rate of Twenty . . . Dollars per head for all steers in excess of Two Thousand . . . head as the steers are shipped to market, or delivered to the owner, . . ."

Defendants' amended answer denies all allegations of the amended petition not specifically admitted; admits the allegations contained on page 1 of that pleading and those on page 2, except the last paragraph thereof; asserts Keith W. Gibb was acting within the scope of his authority as agent of the plaintiffs; states the defendants orally instructed the plaintiffs to keep three groups of cattle, therein identified, separated, to maintain the division and "trap" fences and gates in proper repair, and to separate "bullers" from other cattle; and then alleges that in caring for the steers mentioned in the petition plaintiffs were guilty of nine specific acts of negligence which resulted in the loss of several steers

and in the loss of an average gain in the remainder, all of these damages resulting in a loss to defendants in an amount of money, which was far in excess of the unpaid balance claimed by plaintiffs in their petition to have been due under the contract.

Defendants also included in their amended answer a cross-petition wherein they made the allegations of the amended answer a part thereof and then, by way of counterclaim, prayed that they recover judgment for the amount of damages therein claimed to have been sustained by reason of plaintiffs' alleged negligence.

For all purposes here pertinent it may be stated the plaintiffs' reply and answer to the amended answer and cross-petition contained a general denial and otherwise joined issues on all questions raised by that pleading.

With issues joined as indicated the case came on for trial in the district court of Morris County, whereupon counsel for the respective parties announced in open court that the only issues to be tried were those issues of set-off and counterclaim as alleged in the amended answer and cross-petition of defendants and in the reply and answer to the amended cross-petition of the plaintiffs. It was further stipulated that, except for such issues, judgment should be entered in favor of plaintiffs in accordance with the prayer of their amended petition.

Thereupon a jury, which we take note was composed of jurors from the Flint hills—blue stem pasture area of Kansas, was duly empaneled and sworn to try the cause. The defendants then introduced their evidence in support of their cross-petition as amended and rested. Whereupon the plaintiffs demurred to such evidence. When this demurrer was overruled the plaintiffs introduced their evidence in defense and rested. Defendants then introduced their rebuttal evidence and rested.

Thereafter the court instructed the jury in writing, counsel for both sides presented oral argument and the jury was permitted to retire to the jury room to commence its deliberations, taking with it special questions which had been submitted by the court. Subsequently the jury returned with a general verdict for the plaintiffs and against the defendants, together with three of the submitted special questions and its answers thereto which read:

"1. State whether the defendants' steers had any habits, characteristics, or conditions which imposed any extra burden on the plaintiffs in caring for them and which were not reasonably included or anticipated in the agistment contract.

"Answer: Yes.

"2. If you answer Special Question No. 1 in the affirmative, then state whether the plaintiffs' manager Bill Gibb informed the defendants with reasonable promptness of any unusual habits, characteristics or conditions of which the defendants did not already have knowledge.

"Answer: Yes.

"3. State whether the defendants knew or should have known that their implantation of the steers with stilbestrol would create a problem in caring for the steers which would not ordinarily be encountered or anticipated by an agister.

"Answer: Yes."

Special questions 4 and 5, as submitted by the trial court, were returned by the jury unanswered for the reason that question 4 required no answer unless question 3 had been answered by the jury in the negative and question 5 did not call for any answer unless the jury by its general verdict allowed, which it did not, the defendants damages, as claimed in their amended answer and cross-petition.

Following rendition of judgment in accord with the verdict defendants filed a motion to set aside the answers to the special questions, based on the ground such answers were not supported by the evidence, and a motion for a new trial, based on the first four subsections of our statute (G. S. 1949, 60-3001), prescribing grounds for the granting of such a motion. When these motions were overruled the defendants perfected the instant appeal.

The issues involved will be simplified by stating at the outset that, although numerous specifications of error appear in defendants' abstract, the only errors complained of in their brief are limited to two specifications of error, Nos. 1 and 2, relating to the instructions given by the trial court and to requested instructions refused by that tribunal. In that situation the universal and long established rule of this jurisdiction is that all other specifications of error must be regarded as abandoned (See e. g., *Sams v. Commercial Standard Ins. Co.*, 157 Kan. 278, 139 P. 2d 859; also decisions cited at page 727 of the opinion of *Blakeman v. Lofland*, 173 Kan. 725, 252 P. 2d 852). For our latest expression on the subject see *Ferrellgas Corporation v. Phoenix Ins. Co.*, 187 Kan. 530, 358 P. 2d 786, and decisions there cited, where it is said:

"In defendant's abstract are found twenty-two separate specifications of error. In defendant's brief, only eight alleged errors are argued. It may be that some of the assigned errors are combined in the eight argued, but it must be noted this court has long been committed to the rule that specified errors not argued in the brief are deemed to have been waived . . ." (p. 531.)

What has been heretofore stated makes it appear our decision of this case is limited to alleged instructional errors. Even so the issues with respect to such questions will be further clarified by reference to established rules of this court relating to verdicts and special findings.

One of such rules is that a general verdict resolves all issues of fact, supported by evidence, in favor of the prevailing party, and that such a verdict must stand unless the effect of special findings, when considered as a whole, is such as to overthrow it. (See *Epple v. Kress & Co.*, 187 Kan. 452, 457, 357 P. 2d 828; *Blakey v. Zirkle*, 187 Kan. 562, 564, 358 P. 2d 758; *Grigsby v. Jenkins*, 183 Kan. 594, 596, 331 P. 2d 284.)

In connection with the matters just mentioned it must be remembered that the parties stipulated that the only issues to be tried in the cause now before us were those issues raised by the defendants' set-off and counterclaim in their amended answer and cross-petition and in the plaintiffs' reply and answer to that pleading; likewise kept in mind that under the allegations of the amended answer and cross-petition, as previously indicated, the defendants based their right to relief, almost if not entirely, on certain acts of negligence, alleged to have been committed by the plaintiffs, which were specifically charged to have resulted in and were the cause of the death of certain of their steers and the loss of weight to others. Under the rule last above mentioned all these issues were decided adversely to the defendants. Moreover, and conceding the steers pastured under the contract in question were seriously injured and lost weight as the result of "bulling," the same rule compels the conclusion that issues brought into the case as to (1) whether defendants implanting such steers with stilbestrol prior to their delivery caused a subsequent extraordinary and uncontrollable condition in the herd; and (2) whether plaintiffs, under such conditions, exercised the degree of care required of them by the terms of the contract (See, e. g., *Cox v. Chase*, 95 Kan. 531, 535, 536, 148 Pac. 766), were also questions of fact which were likewise resolved by the jury against the defendants.

We are not disposed to here detail the testimony adduced by the respective parties during the trial of the case, as disclosed by a lengthy record. It suffices to say that, after an extended examination of the record and careful consideration of all contentions made by counsel in support of their respective positions with regard to

the status of the evidence, we are convinced, that even though it must be conceded the evidence was highly conflicting, such record discloses substantial competent evidence to sustain both the verdict and the answers to the special questions; and equally convinced the special findings are not inconsistent with the general verdict.

Thus we come to instructional claims of error advanced by defendants as grounds for reversal of the judgment. In approaching these questions it should be pointed out that in reviewing such claims the rule of general construction is that instructions must be construed together and if taken as a whole they properly state the law they are sufficient (*Giltner v. Stephens*, 166 Kan. 172, 200 P. 2d 290; *Wing v. Mid-Continent Seeds*, 170 Kan. 242, 246, 225 P. 2d 78; *Casner v. Common School District No. 7*, 175 Kan. 551, 556, 265 P. 2d 1027; West's Kansas Digest, Trial, § 295; Hatcher's Kansas Digest [Rev. Ed.] Trial § 185.)

In this connection it is interesting to note that in instructions, to which no objections were made, the trial court: In Instruction No. 5 advised the jury the burden of proof was on the defendants upon their cross-petition and before they could recover they must prove that at or about the times complained of plaintiffs were guilty of negligence which was the proximate cause of the damages to defendants' cattle. In Instruction No. 6 defined negligence as the want of ordinary care and stated that the right of a party to recover requires that the injury complained of be the proximate result of some alleged act or acts of negligence. In Instruction No. 7 defined proximate cause and natural and probable consequences. In Instruction No. 8 specifically instructed the jury as follows:

". . . that it was the duty of the plaintiffs to exercise that degree of care for defendants' cattle which would have been exercised by a reasonably prudent person for his own animals under the same or similar circumstances. If you find that the plaintiffs failed to exercise such care, then plaintiffs were guilty of negligence. If you further find that such negligence resulted in damage to the cattle as a proximate cause thereof, your verdict shall be in favor of the defendants upon that issue."

And in Instruction No. 11 advised the jury that:

"In the absence of special provisions in the contract of agistment, an agister does not insure the safety of the animals covered by the contract. He is liable for loss or damage to them only on proof by a preponderance of the evidence that he has been guilty of negligence or want of ordinary care, as defined above, and that such negligence or want of ordinary care was the proximate or producing cause of the loss or injury."

Another Instruction (No. 12), of which no complaint is made, reads:

"You are instructed that the duty of caring for defendants' cattle rested upon the plaintiffs. It is admitted that they delegated the duty of caring for the cattle to Bill Gibb. If you find from the evidence that Bill Gibb failed to exercise the care for the cattle which would have been exercised by an ordinarily prudent person for his own animals, plaintiffs are liable for such lack of ordinary care upon the part of Bill Gibb to the same extent as if they had been personally guilty of the acts or omissions of Bill Gibb constituting his failure to exercise ordinary care."

Another such Instruction (No. 14) reads:

"You are instructed that it is admitted by plaintiffs that they knew the necessity for separating bullers from the other cattle to prevent injury to the bullers from the other cattle. It then became the duty of plaintiffs either to separate the bullers from the other cattle or, if unable to do so, to notify the defendants of the fact that bullers were in the herd and of plaintiffs' inability to protect them by pasturing them separately. If you find that plaintiffs failed to cut out the bullers and failed to notify defendants of their inability to pasture the bullers apart from the other cattle, you will find that plaintiffs were guilty of negligence."

The first of three instructions complained of by defendants is Instruction No. 9. It reads:

"The contract by which the plaintiff David M. Hughes, agreed to lease to the defendants the pastures of the Mulvane Ranch for the grazing of the steers is known in law as a contract of agistment, and the person who takes in live-stock to graze on his pastures is known as an agister. Such contracts are similar to leases on land. While they provide for some personal services in connection with the pasturing of cattle, such personal services are incidental."

We see nothing wrong with the foregoing instruction. Indeed we believe it is warranted by one of our own decisions (*Lips v. Opp*, 150 Kan. 745, 96 P. 2d 865) where, in dealing with the nature of, and the force and effect to be given, an agistment contract containing provisions remarkably similar to the one here involved, it is said:

"Much emphasis has been put on that feature of the contract which calls for certain services on plaintiff's part. We believe the emphasis has been misplaced. While it is true that the contracts in question call for some personal services in connection with the pasturing of cattle, still from the nature of the contracts it seems clear that personal service was incidental, as in the case of handling a ship under charter. The principal consideration for the promised payment of money was the furnishing of the pastures—the grass and water that made the land pasture land.

"These contracts were only incidentally contracts for personal service. While technically not leases, they are similar to leases. The use of the land was the all-important consideration. The contracts provided that appellee should receive the cattle, furnish pasture for them, supply salt and water, and care

for and return the cattle. Of course, the main object of an agistment contract is the furnishing of pasture land on which the cattle might graze and gain weight. The principal service contemplated by the contracts was simply a duty on plaintiff's part to see that the cattle did not escape, or die from lack of food and water. . ." (pp. 751, 752.)

Further support for the conclusion just announced is to be found in well-recognized legal treatises.

See 2 Am. Jur., Animals, § 21, which reads:

"The particular kind of bailment under which a man, for a consideration, takes in cattle to graze and pasture on his land is technically termed an agistment. An agister is bound to take reasonable or ordinary care of the animals committed to his' charge; but in the absence of a special contract, he is not an insurer of their safety and, in the event of loss, is liable only on proof of negligence or want of ordinary care on his part.

"In accordance with the rule as to ordinary bailments of animals, the bailee's liability may depend upon the terms of the agreement in the particular case, as, for example, where he agrees to insure the animals or to furnish care of a specified nature or to perform specified acts.

"By the term ordinary care and diligence is meant that degree of care that a man of ordinary prudence would exercise under the same or similar circumstances with reference to his own property." (p. 709.)

See, also, 3 C. J. S., Animals, § 17, where it is said:

"In the absence of special agreement, an agistor is bound to exercise ordinary diligence in keeping, feeding, sheltering, and otherwise caring for animals committed to his custody, and is liable for loss or injury to the animals resulting from his breach of such duty; exercise of ordinary care satisfies the agistor's obligations, he is not an insurer; and he may not be held responsible for loss or damage occurring without his fault." (pp. 1108, 1109.)

And see 3 C. J. S., Animals, § 17, which reads:

"In accordance with the general rule, as set forth in Bailments § 22 [6 C. J. p. 1110 note 25-p 1113 note 58], that a bailee and bailor may by special contract enlarge or restrict the liability ordinarily imposed upon a bailee, the parties to a contract of agistment, such as a partido contract, may stipulate as to the kind and degree of care required of the bailee, and the liability of an agistor may be limited or enlarged by a special contract.

"Contracts expressly requiring an agistor to take good care of animals, or such care as he would take of his own animals, call for nothing further than the obligation of reasonable care which is implicit in contracts of agistment and add nothing to what the law would require in the absence of special agreement." (pp. 1110, 1111.)

Next it is urged that the trial court erred in giving Instruction No. 10, which reads:

"In the absence of special provisions in the contract of agistment, the agister is entitled to assume that the animals to be committed to his care are of the kind and character normally and usually encountered in the kind de-

scribed in the contract, and that they will not have any unusual or abnormal conditions, habits, or characteristics which put extra burdens on the agister and which were not reasonably anticipated by him or provided for in the contract. He is not required to provide any special care for such animals, the hazard of any such special care still being upon the owner of the animals. The agister under such circumstances would be required only to take such steps as would be reasonably necessary to promptly notify the owner of the condition of the animals and of the need for such special care, and to protect the animals as well as he reasonably could with his available help and facilities until such time as the owner has an opportunity to care for them himself."

There is much to be found in the heretofore quoted statements from 2 Am. Jur. and from 3 C. J. S. to require approval of the instruction just quoted. Even so we do not feel it is necessary to approve it wholly upon that premise. It suffices to say that in our opinion it properly protects the rights of the parties to an agistment contract such as is here involved and contains a fair statement of what should be the law of this state under the conditions and circumstances therein outlined. Therefore such instruction is approved on that basis.

Finally the defendants argue that the trial court erred in submitting Instruction No. 13, which dealt entirely with their obligation to lessen or mitigate the damages they were seeking to recover under the allegations of their amended answer and crosspetition. It is neither necessary nor required that we here decide that question. All that need be said is that by its verdict the jury refused to allow defendants' claim for damages, hence it cannot be successfully argued that defendants were prejudiced by the submission of such instruction. Under our early decisions (e. g., *Branner v. Stormont*, 9 Kan. [2d] 51; *M'Intosh v. County of Crawford*, 13 Kan. [2d] 171; *Wilkes v. Wolbach*, 30 Kan. [2d] 375, 2 Pac. 508), our present statute (G. S. 1949, 60-3317), and later decisions construing the force and effect to be given its terms (See Hatcher's Kansas Digest [Rev. Ed.], Appeal & Error, §§ 509, 538, 592, and West's Kansas Digest, Appeal & Error, §§ 1026, 1034, 1068[4]), error complained of which does not prejudice the substantial rights of a party affords no sound basis for the reversal of a judgment and must be disregarded.

We have carefully considered all arguments advanced by defendants in support of their claims of error regarding the instructions (Nos. 9, 10 and 13) complained of, as well as the decisions cited in their support, and find nothing in the arguments or decisions which warrants or permits a conclusion the trial court committed reversible

error in submitting them. Moreover, having considered such instructions together with the other instructions given by that tribunal, which we have heretofore referred to at length in order that there may be no possible misunderstanding respecting their force and effect, we are convinced that all the instructions submitted, when considered as a whole, fairly and substantially state the law applicable to the theories of the parties to the case as presented by the evidence adduced by them in the court below. It follows, without laboring contentions advanced with respect thereto, that the trial court did not commit reversible error in refusing two instructions requested by the defendants.

The judgment is affirmed.