No. 44,258

Hazel Canfield, *Appellee,* v. James Oberzan, *Appellant.* (E. R. McKinney, d/b/a The McKinney Motor Company, *Appellee.*)

(410 P. 2d 339)

Opinion filed January 22, 1966.

*John B. Markham,* of Wichita, argued the cause and was on the brief for the appellant.

*Charles F. Forsyth,* of Erie, argued the cause and *Ernest McRae,* of Wichita, and *Clark M. Fleming,* of Erie, were with him on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: This is an action for damages by Hazel Canfield, plaintiff (appellee), against James Oberzan, defendant (appellant), and E. R. McKinney, d/b/a The McKinney Motor Co., codefendant, for damages received by appellee arising from a two automobile collision at a country road intersection on May 20, 1962, at about 7:30 p. m. The case was tried to a jury, commencing on June 1, 1964, and on June 4, 1964, the jury returned its verdict in the sum of $10,750.00 in favor of appellee Canfield against appellant Oberzan. Miss Canfield alleged in her petition that appellant Oberzan was the agent of defendant McKinney but the trial court held in favor of McKinney on a motion for summary judgment and McKinney was eliminated from the case as a codefendant. However, McKinney filed a cross-petition against both plaintiff Canfield and defendant Oberzan and recovered a judgment against Oberzan from which there was no appeal. The judgment of McKinney is not involved in appellant Oberzan's appeal from the Canfield judgment.

Immediately prior to the collision plaintiff Canfield, a teacher in the Oswego public schools, accompanied by her father and mother, was driving her 1959 Chevrolet in a southerly direction at a speed of about 40 miles per hour on a graveled country road about 8 miles north of Oswego in Labette county. At the same time Oberzan, accompanied by his wife and children, was driving as a prospective purchaser a 1959 Pontiac owned by McKinney toward the west on an east-west graveled country road. The automobiles collided at a wide open country intersection, resulting in injuries to Miss Canfield, her parents and the occupants of the Oberzan car, as well as to both vehicles.

Plaintiff Canfield's amended petition charged defendant Oberzan with various acts of negligence. Defendant Oberzan answered, denying negligence on his part and charging plaintiff Canfield with acts of contributory negligence. Canfield's reply was a general denial. In his cross-petition defendant McKinney charged both plaintiff Canfield and defendant Oberzan with negligence which caused the collision. At the trial the parties stipulated as to the damages to the Canfield and McKinney cars.

The Canfields were returning to their home located about two miles south of the intersection. The Oberzans were on their way home to Oswego. The Getman and Goedeke houses are located, one on each side of the north-south road traveled by Canfield at a high point on the road approximately 100 yards, more than a quarter of a mile (about 1900 feet) north of the intersection. The graveled north-south road slopes downhill from that point to the intersection. When Miss Canfield was at the elevated point she looked to the east and saw a car coming from the east, which she judged to be about a half mile east of the intersection. Miss Canfield testified she first saw the other car approaching when she was going down the incline and again saw it before entering the intersection at which time the Oberzan car was still twice as far from the corner as she was. She further testified that she looked in all directions before approaching the intersection.

Oberzan did not see the Canfield car until just shortly before the impact when he was about six car lengths east of the intersection. Witnesses for the plaintiff testified that there was no obstruction of view to a driver coming from the north approaching the intersection. Defendant Oberzan testified there were some weeds on the north side and east of the intersection on the east-west road and

that was the only reason he could think of as to why he didn't see the plaintiff. The testimony of deputy sheriff White fixed the point of impact at twelve feet, six inches from the east entrance of the intersection and approximately four feet and two inches from the north edge of the intersection. He determined the point of impact by the tire markings on the gravel.

The weather was clear, the road was dry and graveled within the intersection. There were no stop signs or traffic controls and both roads were straight and level leading up to the intersection. The north road was twenty-two feet wide. The south road was twenty-two and a half feet wide. The east road was twelve feet wide and the road west of the intersection was thirteen feet wide. The intersection also had four curved side lanes so that drivers desiring to turn could do so without using the center lane leading to the center of the intersection. Mr. Oberzan testified he was driving between fifty and fifty-five miles per hour when he applied his brakes. Miss Canfield testified that she was driving about thirty-five miles an hour when she entered the intersection. She further testified that as she approached the intersection she did not attempt to stop or make any turn as she thought she had plenty of time to go across. The front of the Pontiac driven by Oberzan struck the Canfield Chevrolet on the left-hand side at the point of impact.

Dr. I. J. Waxse, plaintiff's attending physician, called as a witness, testified that plaintiff was in shock and severe pain following the accident. X-rays were taken by Dr. Waxse and disclosed that plaintiff had suffered multiple fractures from the second through the eighth left ribs, a fracture of the lower right humerus and a possible oblique displacement.

The collision was investigated by deputy sheriff White, of Labette county, who did not arrive at the scene until about 9:00 p. m.

At the conclusion of plaintiff's evidence defendant Oberzan filed and argued a motion to dismiss and a motion for directed verdict on the grounds of contributory negligence of plaintiff. The motions were overruled by the court. At the conclusion of the evidence of both parties defendant Oberzan filed a motion for directed verdict which was overruled by the court. Nine requested instructions were submitted by defendant Oberzan, the court giving one (instruction number five) and defendant Oberzan objected to the

court's failure to submit the remaining requested instructions. Defendant Oberzan objected to instruction twenty-one on the grounds that it was misleading, erroneous and inadequate to instruct the jury on the question of contributory negligence. The court submitted forty instructions to the jury. The jury returned two verdicts, one in favor of McKinney against Oberzan for damages to McKinney's Pontiac, from which there is no appeal, and a second verdict in favor of plaintiff Canfield and against Oberzan for $10,750. In addition to their general verdicts answers to interrogatories were returned as follows:

"1. Do you find that plaintiff was negligent, which negligence contributed to and was a proximate cause of the collision?
"Answer: No.
"2. Do you find the defendant Oberzan guilty of negligence, which was a proximate cause of the collision?
"Answer: Yes.
"3. If you answer the above question in the affirmative, please state of what act or acts of negligence you find the defendant guilty.
"Answer: Failure to observe proper precaution for safety at intersection."

Judgments were entered on the verdicts. Defendant Oberzan filed motions for new trial and for judgment in accordance with his motion for directed verdict which were argued and overruled by the court. Oberzan duly perfected his appeal to this court, specifying nine points of error, the fifth of which has been abandoned.

The appellant Oberzan principally argues that appellee Canfield was guilty of contributory negligence which barred her recovery. In support of his position on this point appellant contends that contributory negligence barring recovery by Canfield was established by her own testimony and that of her father and mother. In support of his contention, appellant cites the following testimony adduced on cross examination of Miss Canfield:

"Q. Miss Canfield, do you recall testifying at the time your deposition was taken in this case, in Erie, Kansas, on May 15, 1964?
"A. Yes.
"Q. I will ask you if you recall this question and answer:
'Question: When you looked at the car, as I understand your testimony, you looked at it two times?
'Answer: Yes.'
Do you recall that?
"A. Yes.
"Q. 'Question: Once when you passed the Goedeke House?
'Answer: Yes. That was when I was at the top of the hill.'
"A. Yes.

"Q. 'Question: That was when you were a quarter of a mile, and on the second time when you were about an eighth of a mile?
'Answer: Yes.'
Do you recall that question and answer?
"A. Yes, I think so.
"Q. 'You didn't look again then, before you had the impact?
'Answer: No. Because I was going ahead, and was going on.' Is that the question and answer?
"A. Yes.
"Q. 'Question: Where were you when you made that decision that you had plenty of time to cross the intersection?
'Answer: Well, both times.'
Do you recall that question and answer?
"A. What was that? Did you say which time?
"Q. 'Question: Where were you when you made that decision that you had plenty of time to cross the intersection?
'Answer: Well both times.'
Do you recall that question and answer?
"A. I guess I do.
"Q. 'Was it the last time, then that you made the decision, when you were one-eighth of a mile away?
'Answer: Yes.'
Do you recall that answer?
"A. Yes."

On direct examination she testified:

". . . I was driving between forty and forty-five miles an hour. I probably slowed down a little before reaching the intersection and probably wasn't going over thirty-five. I saw a car coming from the left or from the east toward the west. We were going down that incline toward the intersection when I first saw this car. I was comparing it where he was and where I was. I saw the car again before we entered the intersection, and he was still just twice as far from the corner as I was. I hadn't gone into the intersection then. I looked in all directions before approaching this intersection. I supposed that he was driving at a normal rate of speed but I didn't have any idea he was going as fast as he was. The only thing I remember about the impact was that we were out there in the field where we landed. I did not see the other car at the time of the impact. I heard the noise but I don't recall being hit. I think I was conscious when we first landed because I knew I was there. I could hear, but I didn't remember everything. As I approached the intersection, I did not attempt to stop or make any turn, as I thought I had plenty of time to go across. There was no doubt in my mind but what I was there twice as close to that intersection as that other car was. The only thing that I think must have happened was that I misjudged his speed. I didn't realize he was driving as fast as he was. I assumed that he would slow down, and if I had known he wouldn't I would never have gone on. I would have stopped. I believed I had the right of way at the intersection. I did not try to beat him to that crossing."

Appellant cites the testimony of appellee's father, Jay Canfield on cross examination as follows:

"Q. Was there anything to keep Hazel from stopping the car back up to the north of the intersection, to keep from entering the intersection, Mr. Canfield?

"A. I don't think so.

"Q. And you saw this Pontiac coming from the east, approaching the intersection, Mr. Canfield, and you saw that it was getting closer and closer to the car that you were riding in, didn't you?

"A. Sure.

"Q. Then why didn't you speak to Hazel clear back up here, before she entered the intersection?

"A. Because we were in the lead, and I didn't have the least idea but what we would be on down the road before he got there.

"Q. When was it that you realized that you were mistaken in your judgment, Mr. Canfield?

"A. About the time the explosion occurred.

"Q. Couldn't you tell, when you were about to enter that intersection from the north, and he was coming from the east, that somebody better be putting the brakes on your car?

"A. No. No, I couldn't.

"Q. His car was visible, too, wasn't it, Mr. Canfield?

"A. Sure. Sure it was. Yes.

"Q. You were conscious all of the time from the time you left the Goedeke house, until the collision occurred, weren't you?

"A. I didn't have nothing else to do.

"Q. Was it your opinion that your daughter had the right to try to beat this man across that intersection?

"A. I wouldn't say.

"Q. You have no answer to that question?

"A. No."

He further testified on re-direct examination that his daughter's car entered the intersection first and that her car was about the center of the intersection at the time of impact. He said that he misjudged the speed of the Oberzan car.

It is to be noted that the jury specifically answered the question as to plaintiff's contributory negligence in the negative.

The rules within which the issue under discussion is to be resolved are well established in this jurisdiction, with the qualification that the application thereof depends ultimately upon the facts in each particular case. As pointed out in *Drake v. Moore,* 184 Kan. 309, 315, 336 P. 2d 807, and recently reiterated in *Grisamore Administratrix v. Atchison, T. & S. F. Rly. Co.,* 195 Kan. 16, 19, 403 P. 2d 93, and *Deemer v. Reichart,* 195 Kan. 232, 240, 404 P. 2d 174:

" '. . . each individual case must be determined on its particular conditions and circumstances.' "

The application of the rules for determining the question of contributory negligence was fully discussed in the recent case of *Deemer v. Reichart,* supra, at page 241:

". . . it may be stated very generally the question of contributory negligence is ordinarily one of fact to be determined by the jury, it being for the jury to determine, considering the special circumstances of each particular case, whether the conduct of the party was such as would be expected by a reasonably careful person. In determining whether as a matter of law a plaintiff is guilty of contributory negligence precluding his recovery, all of the testimony favorable to the plaintiff together with all reasonable inferences and deductions to be drawn therefrom must be accepted as true, and if the facts are such that reasonable minds might reach different conclusions thereon, the question must be submitted to the jury and cannot be determined by the court as a matter of law. (See *Sponable v. Thomas,* 139 Kan. 710, 33 P. 2d 807.)

"Contributory negligence is never presumed; it must be established by proof, and when the plaintiff's evidence does not disclose his contributory negligence as a matter of law, the jury has an absolute right to disbelieve and disregard all evidence tending to establish its existence."

With these rules in mind let us consider the evidence. Plaintiff was driving at a speed of 40 to 45 miles per hour as she passed the Goedeke house at a distance of some 1900 feet from the intersection. At this point she first saw defendant's automobile. It appeared to be twice as far from the intersection or about a half a mile away. Plaintiff looked again when she had traveled about half the distance to the intersection, the defendant's car was still twice as far from the intersection. She didn't see any change of speed in the other car and thought she had plenty of time to get across the intersection. She didn't know what happened immediately before or after the accident.

Plaintiff's father testified that he saw the Oberzan car as Canfield entered the corner of the intersection and it was one hundred yards east of the intersection.

The defendant was doing fifty to fifty-five miles per hour as he approached the intersection. He first saw plaintiff's car shortly before the impact. It was then about one hundred feet north of the intersection. He applied his brakes but was not able to stop his car.

Considering the evidence under the applicable rules, it seems clear that facts convicting plaintiff of contributory negligence were

not established by proof beyond the point where reasonable minds might differ. Conceding *arguendo* that there was evidence from which the jury might have found contributory negligence, where a determination of the issue requires weighing of the evidence, such is the province of the jury.

Support for the conclusion reached may be found in the recent cases of *Pennsylvania National Mutual Cas. Co. v. Dennis,* 195 Kan. 594, 408 P. 2d 575; *Deemer v. Reichart,* supra, and *Gard v. Sherwood Construction Co.,* 194 Kan. 541, 400 P. 2d 995.

A motorist approaching an intersection is not required to look continuously for cross-traffic. The duty of one approaching an intersection was discussed in *Sullivan v. Johnston,* 164 Kan. 386, 190 P. 2d 417, wherein it was stated at page 390:

"Such a holding would require this court to conclude, as a matter of law, that a motorist approaching a city street intersection must continue to look practically at all times to the left in order to determine whether an approaching vehicle will or will not comply with usual standards of driving in cities and with traffic regulations. Such is not the law. The rule is well established that the operator of an automobile may assume that others using the streets will observe the law and he is not guilty of contributory negligence in acting upon such assumption unless and until he has knowledge to the contrary."

We have considered cases cited by appellant and are of the opinion that as applied to the facts here, they are not determinative. *Stroud v. McCusker,* 175 Kan. 257, 263 P. 2d 260, is distinguishable on the facts because plaintiff *failed to look* until too late. In *Mies v. Twietmeyer,* 193 Kan. 97, 392 P. 2d 118, the plaintiff *looked but did not see.*

The most recent consideration of comparable facts involving a collision at an intersection of country roads is to be found in *Reichenberger v. Rosenhagen,* 187 Kan. 387, 357 P. 2d 776, wherein it was stated:

"On that point it is sufficient to say the court is of the opinion that under the circumstances which attend, the question was one of fact upon which the minds of reasonable men might differ and should have been submitted to a jury under proper instructions . . ." (p. 389)

The appellant next complains that the trial court failed to properly instruct as to the law of contributory negligence and erred in refusing to submit appellant's requested instructions dealing with the subject.

The court submitted forty instructions to the jury. The appellant requested nine instructions, one was submitted by the court. All

of the instructions were included in the record on appeal. The nature of the case which involved a cross petition of defendant McKinney against both Canfield and Oberzan and their answer thereto necessitated lengthy and somewhat complex instructions to cover all of the issues raised by the various pleadings and evidence of the parties.

The rule to be applied in considering the questions raised by appellants on these points was stated in *Hughes v. Atkinson,* 188 Kan. 413, 362 P. 2d 618, at page 419 of the opinion:

"In approaching these questions it should be pointed out that in reviewing such claims the rule of general construction is that instructions must be construed together and if taken as a whole they properly state the law they are sufficient. (*Giltner v. Stephens,* 166 Kan. 172, 200 P. 2d 290; *Wing v. Mid-Continent Seeds,* 170 Kan. 242, 246, 225 P. 78; *Casner v. Common School District No. 7,* 175 Kan. 551, 556, 265 P. 2d 1027.)"

Appellant complains that instruction 21 is erroneous in that it implies that plaintiff Canfield could recover even if she and Oberzan were both found to be negligent. Instruction 21 was based on Oberzan's answer in which he alleged that plaintiff's injury was caused by the negligence of plaintiff. The instruction merely advises the jury that if they should find the negligence of plaintiff was "the sole, proximate cause" of the alleged injury then plaintiff cannot recover. Any such implication which might have been made by the jury was clearly absolved in instruction 13 where the court in further explaining the effect of negligence by plaintiff stated:

". . . for if both parties are negligent neither can recover from the other on account thereof . . ."

The rules concerning negligence, contributory negligence, proximate cause and the pertinent rules of the road are applied to the evidence in the lengthy instructions submitted by the court. Though repetitious in some instances, the instructions are complete and correctly state the principles of law involved.

We have examined the requested instructions of appellant and find them to be sufficiently covered by the instructions given. The rule that requested instructions are properly refused when the substance is contained in the instructions given is too well established in this jurisdiction to require further discussion. *Kettler v. Phillips,* 191 Kan. 486, 382 P. 2d 478; *Goldman v. Bennett,* 189 Kan. 681, 371 P. 2d 108; *Williams v. Hendrickson,* 189 Kan. 673, 371 P. 2d 188.

The appellant next contends that he was deprived of a fair trial because the jury while deliberating was not returned to the court-

room for further information pursuant to K. S. A. 60-248 (e) which provides:

"After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of the law shall be given, or the evidence shall be read or exhibited to them in the presence of, or after notice to, the parties or their counsel."

The evidence was developed on this point by two members of the jury called as witnesses for appellant on the motion for new trial.

The foreman of the jury, Don J. Hoffman, testified as narrated in the record:

"I had a request of the bailiff, H. L. Lane on an interpretation of one of the instructions that was not quite plain to many of us on a point of law. It was on the instruction so far as the rights of the cross petition were concerned and had to do with the law."

The bailiff after talking to the court returned to the jury room and told Hoffman,

". . . we had the full law in the instructions, and that if we. . . . He said that the judge told him that if we read them over completely and fully that we should find the necessary information in them."

Hoffman further testified he didn't recall any juror asking to review the testimony of any witness.

The testimony of James Sias, a member of the jury, was substantially the same as that of Hoffman. Sias also testified that none of the jurors asked the foreman to ask the judge to be returned for further information or instructions.

The record discloses that after the incident complained of the jury was again before the court on two occasions prior to returning their verdict but put no questions to the court at either time.

It appears the trial court failed to comply precisely with the mandate of 60-248 (e), *supra.* However, the testimony of the foreman indicates the jury's inquiry was directed only at the cross petition of McKinney, the verdict on which is not in this appeal. Even if the incident is construed to amount to a request by the jury to be returned pursuant to the statute we cannot hold the incident, under the facts here, to be of such magnitude as to require a reversal. It must be concluded from the record that if prejudice to appellant's rights resulted from the incident it was as to cross petitioner McKinney, not as to appellee Canfield. In *Root v. Packing Co.,* 94 Kan. 339, 147 Pac. 69; it was said:

"Under the command of the codes, civil and criminal, and the authority of precedent for over half a century, we are prohibited from reversing judgements for mere technical errors or irregularities which do not affirmatively appear to have prejudically affected the substantial rights of the party complaining when it appears upon the whole record that substantial justice has been done." (p. 345.)

The rule has been stated in various ways in many other decisions of this court and is now expressed in the new civil code, K. S. A. 60-261:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or ommitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

The appellant further complains that he was prejudiced by the admission of testimony of plaintiff's father on rebuttal. The testimony concerned the question of whether the Canfield car was airborne following the collision. Plaintiff's evidence in chief was that the car was airborne, defendant Oberzan testified that he didn't see the Canfield car flying through the air. On rebuttal plaintiff offered testimony of her father to support plaintiff's position by showing the Canfield car crossed a ditch and fence without leaving marks. In view of Oberzan's testimony, the rebuttal by plaintiff was properly admitted.

We have considered other points raised by appellant, they concern matters resolved by what has been said. Further discussion would only be repetitious.

In his brief, appellant concedes that the answers to interrogatories are consistent with the general verdict.

In view of what has been said no prejudicial error is reflected by the record herein.

The judgment is affirmed.