No. 45,585

Robert E. Sweaney, *Appellee,* v. United Loan and Finance Company, a Corporation, and Jack Bagby, *Appellants.*

(468 P. 2d 124)

Opinion filed April 11, 1970.

*Bill E. Fabian,* of McAnany, Van Cleave & Phillips, of Kansas City, argued the cause and was on the brief for appellants.

*Charles S. Schnider,* of Schnider, Shamberg & May, of Kansas City, argued the cause, and *John E. Shamberg, Jacob F. May, Jr.,* and *Gerald T. Elliott,* of Schnider, Shamberg & May, of Kansas City, and *Thomas Finigan,* of Kansas City, were with him on the brief for appellee.

The opinion of the court was delivered by

Fatzer, J.: This was an action to recover actual and punitive damages for assault, slander, and wrongful arrest. The jury returned its verdict in favor of the plaintiff and allowed him $3,000

actual damages and $18,000 punitive damages. The defendants have appealed.

The plaintiff, Robert E. Sweaney, was retired from the Kansas City, Kansas, fire department on a disability pension as the result of a leg injury. On November 25, 1966, the date of the incident in question, he was employed by Howard Hart, d/b/a Hart Body Shop, located on Quindaro Boulevard in Kansas City. The defendants-appellant are the United Loan and Finance Company, Inc., and Jack Bagby, the vice president and manager of its office located at the northeast corner of the intersection of 9th and Minnesota Avenue.

Immediately east of the finance company office building is a small used car lot operated by Bagby in conjunction with the finance company. A few days prior to November 25, 1966, a 1965 Yellow Oldsmobile 442 was stolen from the finance company's used car lot. The theft was reported to the police. The vehicle had a "dealer's" license on it when stolen.

On the date in question, Hart directed Sweaney to deliver an automobile to Van's Chevrolet Company in Mission, Johnson County, and there pick up a 1965 Yellow Oldsmobile 442 and return it to the body shop for repair. Coincidentally, the Yellow Oldsmobile Sweaney picked up also had a "dealer's" license on it, but it was not the car which had been stolen from the finance company's used car lot. Sweaney's route back to the body shop required him to proceed west on Minnesota Avenue and past 9th and Minnesota in front of the finance company office. The traffic was heavy and Sweaney was driving slowly. Bagby, who was talking on the telephone, saw the Yellow Oldsmobile through the window of the office and shouted, "that's it, that's the car," or words to that effect, and he and an employee of the finance company, Richard Pryor, picked up the hue and cry.

Bagby dropped the telephone and sped out of the office, running westerly down the center of Minnesota Avenue until he caught up with Sweaney in the Yellow Oldsmobile. Sweaney was proceeding in the north traffic lane nearest the curb—he had stopped about a half block west of the 9th and Minnesota Avenue intersection due to the traffic. He testified he heard a man shouting who later was identified as Bagby. By this time he had the car in motion. Bagby took hold of the left door handle and attempted to get into the car. He was not talking in a conversational tone, but was hollering and screaming at Sweaney and told him to "stop that car—stop that car."

Sweaney asked "what do you mean, stop this car," and Bagby said, "you will find out." Sweaney said, "what's the matter with you," and Bagby said, "you will find out." When Sweaney could not ascertain what was happening, he became frightened and stopped the car. He left the motor running, quickly moved over to the righthand seat, opened the righthand door and jumped out into the street. He felt that more than one person was following him, with Bagby being the closest. In his haste, Sweaney tripped as he jumped out of the car and fell to the pavement injuring his left leg, but pulled himself up and over the curb. He ran into the Western Auto Store, which was immediately north of the curb and across the sidewalk. When he was five or six feet inside the door, he looked back over his shoulder and saw Bagby just entering the door. Pryor was running into the store behind Bagby.

After Bagby entered the store, he hollered, "stop thief, don't let that man get away." The frightened Sweaney, with Bagby in hot pursuit, ran toward the rear of the store and took sanctuary behind the mail order counter where two or three women clerks were working. When Bagby reached the mail order counter, Sweaney asked, "what's the matter with you?" and Bagby again replied, "you will find out." Sweaney said, "well what is happening?" and Bagby said ,"you stole that car." Sweaney said, "stole that car?" and Bagby said, "yes." Bagby then hollered for someone to call the police, and said, "don't let this man jump the counter, don't let him get away."

Elliott L. Teters, a sergeant of the Kansas City, Kansas, police department, was off duty, and was present in the store as an employed security man. He was the only disinterested eyewitness who testified at the trial. He estimated there were approximately 40 people in the store when the incident occurred. He saw Sweaney running down the aisle of the store with Bagby pursuing five or six feet behind—Pryor was running behind Bagby. The evidence was undisputed that Bagby, in a hard breathing voice, shouted for someone to stop Sweaney. The evidence was conflicting as to what Bagby said, but he admitted he was convinced that Sweaney was a thief and that the car was the car stolen from his lot. He admitted he told Sweaney, "don't try to jump over the counter," and not to leave. Bagby also admitted he told Teters that Sweaney stole the car he was driving and asked that the police be called.

Sweaney made two or three requests that someone call his boss or Van's Chevrolet to verify the fact the car was not stolen, but Teters denied his request.

Teters testified that while the men were running in the store, Bagby shouted "stop, stop, you're a thief," several times. He also testified that after Sweaney got behind the counter, and after he showed Bagby his credentials as a police officer, Bagby said "call the police—he's a thief, he stole a car," in a loud tone of voice. By this time, there were approximately 20 to 25 people gathered in the vicinity of the mail order counter.

Bagby left the store to check the serial number on the car Sweaney had been driving. Before he left, Bagby stated words to Teters implying that Sweaney was a thief and that he was to be held until he (Bagby) got back. Bagby returned in a few minutes, and according to Teters, said in a low voice, "I'm sorry, it's all a mistake." Bagby then wanted to leave, but Teters required that he wait for the police district car to arrive so that a report of the incident could be made. By this time, the frightened Sweaney was mad. He demanded that Bagby be arrested, which the officers of the district car refused to do. After a report was made, Bagby returned to his office and Sweaney drove the Yellow Oldsmobile to the body shop.

Bad news travels fast. By the time Sweaney arrived at the body shop, his boss, Mr. Hart, and his fellow employees had already been informed he was in trouble with the police.

In seeking reversal, the defendants complain of several alleged trial errors. They first contend the district court erred in refusing their request to amend their answer so as to include the defense provided in K. S. A. 21-535b. The point is not well taken.

The statute (21-535b) is captioned ". . . defense to actions by persons detained for questioning," and provides a defense to actions for assault, false arrest, false imprisonment, unlawful detention, defamation or slander, brought by any person by reason of having been detained for questioning on the premises of, or in the immediate vicinity of, a store or other mercantile establishment. The statute contemplates the detention of a person for questioning in a reasonable manner *immediately after* the suspected shop lifting and before the person leaves the premises, or the vicinity thereof— not several days later. It specifies "if there was reasonable grounds for believing that such person *was committing* the offense." (Emphasis supplied.)

In the instant case, the theft of the car had been committed at least two days before and probably longer. Clearly, there was no

question of immediate detention or pursuit of the person suspected, and the provisions of the statute which must be strictly construed, do not apply. This court has repeatedly held that amendments to pleadings are within the discretion of the district court (K. S. A. 60-215 [*a*]), and no error will lie unless such discretion is abused. (*Trimble, Administrator v. Coleman Co., Inc.* 200 Kan. 350, 358, 437 P. 2d 219.) There could be no question of abuse of discretion on the part of the district court, since the statute had no application to this action. The district court did not err in refusing the amendment.

The defendants next contend the district court erred in refusing their request to add the following to instruction No. 9, that "an action for wrongful arrest necessarily incorporates an assault, and if you find there was a false arrest, then you need not concern yourselves with whether or not there was an assault, in that an assault is a necessary ingredient of false arrest." The contention cannot be sustained.

The defendants ignore the fact the actual physical assault, constituted by both acts and words on the part of Bagby, began at the time plaintiff was confronted in the street. The physical assault started at that moment with the result that plaintiff, fearful of Bagby's acts, left the car in such a hurry that he fell in the street and injured his left leg. As to the false arrest—that came *after* the physical assault was over. The wrongful arrest occurred with the plaintiff's movements being restricted within the confines of the store. An action in tort for false arrest necessarily includes an assault, but such assault in that situation is a technical assault. (*Perry v. Kress & Co.,* 187 Kan. 537, 358 P. 2d 665; *Black v. Clark's Greensboro, Inc.,* 263 N. C. 226, 139 S. E. 2d 199; 35 C. J. S., False Imprisonment, § 10, p. 634.)

In the instant case, there are two separate and distinct acts in the chain of events. The act of false arrest following the assault upon the plaintiff, permitted the jury to assess damages for both torts.

The defendants claim the district court erred in refusing to instruct the jury that to constitute slander, the defendant "had to know the words he spoke of Sweaney were false at the time of being spoken, or the statement [was] made in such a willful and wanton manner as to constitute a disregard as to whether or not the statements were true."

There was substantial evidence Bagby pursued the plaintiff into the store where at least 40 persons were present, saying, "stop thief, don't let that man get away," and also said, "you stole that car."

In *Koontz v. Weide,* 111 Kan. 709, 208 Pac. 651, it was held that words charging a person with any felony are actionable *per se.* Words slanderous *per se* are those which intrinsically, without innuendo, import injury. They are words from which damage, by consent of men generally, flows as a natural consequence. (*Bennett v. Seimiller,* 175 Kan. 764, 267 P. 2d 926.) Thus, the question whether Bagby knew of the falsity of the statement is immaterial, and malice will be inferred. (*Garvin v. Garvin,* 87 Kan. 97, 123 Pac. 717; *Stice v. Beacon Newspaper Corporation,* 185 Kan. 61, 64, 340 P. 2d 396, 76 A. L. R. 2d 687.) An apology or retraction is no bar to recovery, but lack of malice may be shown by such apology in mitigation of damages. (*Koontz v. Weide,* supra.)

The damage to Sweaney was done when he was publicly accused of stealing an automobile—a charge of the crime of larceny of a motor vehicle—which crime is punishable by imprisonment and hard labor. (K. S. A. 21-533, 21-534.) Instruction No. 10 was the slander instruction, and we cannot say from the record that the district court erred in any respect in refusing the defendants' requested addition thereto.

The defendants complain the district court erred in failing to substitute or insert the words "may be" for the word "is," and the word "nominal" before the word "damages" in the third sentence of Instruction No. 10, and to insert the phrase "known to be" before the word "false" in Instruction No. 11. The defendants lift from the instructions a word or two, or a phrase or two out of context and attempt to focus this court's attention to those words or phrases. This court has said that the rule with respect to claims of instructional error advanced by a defendant as grounds for reversal is that the instructions must be construed together, and if taken as a whole they properly state the law, they are sufficient. (*Hughes v. Atkinson,* 188 Kan. 413, 419, 362 P. 2d 618, 94 A. L. R. 2d 309.) In *Emmerich v. Kansas City Public Service Co.,* 177 Kan. 443, 280 P. 2d 615, upon a similar complaint, this court said:

". . . Defendants contentions have been examined and it may be stated that one or two instructions, if isolated from the context of all, might be subject to criticism. However, taken as a whole, the instructions ably apprised the jury of the issues and the questions of law involved, and we find no error justifying a reversal." (1. c. 450.)

See, also, *Canfield v. Oberzan,* 196 Kan. 107, 115, 410 P. 2d 339.

We have examined the court's 21 instructions to the jury and are of the opinion they correctly stated the law so as to permit it to determine the issues involved, and we find no error justifying a reversal.

The defendants next contend the district court erred in permitting the witness Hart, Sweaney's boss, to testify over their objection, that one Gene Byers, a bartender in a private club called "The Office," received a telephone call from some unknown caller while Hart was present in the bar; that the bartender then turned to Hart and inquired, "What's the matter with Bob? I just got a call that he was in trouble with the police."

When the objection was made, counsel for the plaintiff stated its purpose was to show "how quickly information of this kind spreads." It is contended by allowing this evidence, the court precluded the defendants from inquiring from the person making such report as to how the purported caller found out about it, or whether in fact such a call was ever made.

The plaintiff contends the testimony was not objectionable since the telephone call reported the happening of an event, that is, Sweaney's involvement with the police, which was a fact proven by other testimony, and not questioned by the defandants; and, further, that neither Hart nor the bartender was ever involved with the truth or falsity of the report. It is further argued the report to Hart was in the same category as if it had been a report of a fire at 9th and Minnesota—the happening of the event, not its truth or falsity.

Whether the objection was valid depends upon whether the testimony was introduced to prove the truth of Byers' statement— the absent declarer. It appears rather clearly that such was not the purpose and that the testimony was introduced only to prove the happening of an occurrence—that Byers had received a telephone call that the plaintiff was in trouble with the police—not the truth of the report. In *Malone v. New York Life Ins. Co.* 148 Kan. 555, 83 P. 2d 639, we said:

"It has been said that the theory of the rule against hearsay is that when the utterance is offered as truth of the fact asserted, the credit of the assertor becomes the basis of inference and therefore can be received only when the assertor is on the stand and subject to cross-examination, but that if the utterance is offered, not as an assertion to evidence the matter asserted, but without reference to its truth, the rule does not apply. (See 3 Wigmore on Evidence,

2d ed., p. 770, § 1766. See, also, *Bank v. Hutchinson*, 62 Kan. 9, 17, 61 Pac. 443; *Mills v. Riggle*, 83 Kan. 703, 112 Pac. 617.). . ." (l. c. 558, 559.)

The evidence was the report of a fact—that a telephone call had been received that Sweaney was in trouble with the police. Hart testified he heard the statement—not that it was true. We think the evidence was not objectionable under the foregoing rule.

The defendants lastly contend the verdict of the jury was given under the influence of passion and prejudice and was so excessive as to constitute a confiscation of the defendants' livelihood. They principally focus their argument on the amount of punitive damages awarded by the jury. They urge the jury completely disregarded Instruction No. 16, that mitigating circumstances may be considered by it in determining the amount of punitive damages. They argue the record is void of any indication of personal ill will or spite on the part of Bagby toward Sweaney, and that the only evidence for the jury to consider was the activities of Bagby for a period of twenty minutes at the outside.

The facts of the case have been set forth and it is unnecessary to repeat them. No contention is made that Instruction No. 16 did not properly and adequately advise the jury of what it might consider in awarding actual damages, and also what it must find before awarding punitive damages, if any, and that in determining the amount of such damages, mitigating circumstances of the occurrence may be considered, and that it might award the plaintiff as punitive damages an amount not to exceed $40,000.

It is difficult to imagine a case which would justify a jury awarding substantial punitive damages more than the facts presented in this record. Bagby called Sweaney a thief several times in the store in the presence of approximately 40 people and cornered him like a common criminal behind the mail order counter where approximately 20 to 25 people quickly gathered, and there charged him with being a car thief; in addition, he had the police called. But that was not all. Previously, in the street, Bagby placed Sweaney in fear of injury to his person and caused him to jump out of the car and fall and injure his leg, which constituted an aggravated assault. Moreover, Bagby had Sweaney detained behind the mail order counter while he checked the serial number of the car, which was grounds for the jury to find Bagby guilty of wrongful arrest.

These facts do not stand alone—they stand together. All three of the wrongs were perpetrated by Bagby on Sweaney in his zeal

to recover what he thought was his company's property. Sweaney was doing his appointed job in a proper manner. He was suddenly confronted by Bagby who ignored Sweaney's basic rights and took the law into his own hands in such a manner as to evince reckless indifference and disregard of the rights of others, or constituted such gross and wanton conduct as to justify the jury in awarding substantial punitive damages. Generally, the intentional doing of a wrongful act with full knowledge of its character, and without cause or excuse, is malicious and warrants an award of exemplary damages. (*Frazier v. Cities Service Oil Co.,* 159 Kan. 655, 157 P. 2d 822; *Allman v. Bird,* 186 Kan. 802, 353 P. 2d 216; *Kohler v. Kansas Power & Light Co.,* 192 Kan. 226, 387 P. 2d 149.)

In *Hammargren v. Montgomery Ward & Co.,* 172 Kan. 484, 241 P. 2d 1192, it was held there is no fixed rule by which the amount of punitive damages may be measured, and it was further held:

"In assessing punitive damages, the nature, extent and enormity of the wrong, the intent of the party committing it and generally all the circumstances attending the particular transaction, together with any mitigating circumstances tending to reduce the verdict or wholly defeating the damages may be considered." (Syl. ¶ 5.)

Punitive damages are allowed not because of any special merit in the injured party's case, but are imposed by way of punishing the wrongdoer for malicious, vindictive, or wrongful and wanton invasion of the injured party's rights, the purpose being to restrain or deter others from the commission of like wrongs. (*Watkins v. Layton,* 182 Kan. 702, 324 P. 2d 130.) In awarding punitive damages in this case, the jury undoubtedly considered that Bagby's mistake concerning Sweaney was not restrained or deterred with respect to any other person who might find himself in Sweaney's shoes in the future, when Bagby frankly admitted that come another time and place, he would do the same thing over again!

It was the province of the jury to weigh all the evidence and draw inferences and conclusions therefrom and it had the right to draw the inference that Bagby's acts constituted conduct on his part such as to evince a reckless disregard of the rights of Sweaney and that he was conscious of the probable consequences of his wrongful acts. We cannot say that the award of punitive damages in this case shows passion and prejudice on the part of the jury,

and we affirm its verdict for the amount of actual and punitive damages awarded the plaintiff.

The judgment is affirmed.

PRICE, C. J., dissents from the award of punitive damages.

FONTRON, J., dissenting in part: I agree this is a case where punitive damages, of a substantial character, may be justified, but the amount of this award strikes me as unconscionable.

KAUL, J., joins in the foregoing dissent.