No. 41,369

PHILIP KARRIGAN, *Appellant,* v. HARRY E. VALENTINE and L. F. VALENTINE, *Appellees.*

(339 P. 2d 52)

Opinion filed May 16, 1959.

*John Berglund,* of Clay Center, argued the cause and was on the brief for the appellant.

*W. M. Beall,* of Clay Center, argued the cause, and *H. L. Sheppeard,* of Clay Center, was with him on the brief for the appellees.

The opinion of the court was delivered by

PRICE, J.: This is an action against the publishers of a newspaper to recover for an alleged libel.

Defendants' demurrer to the petition, on the ground that pleading fails to state facts sufficient to constitute a cause of action, was sustained.

Plaintiff has appealed.

The nature of the case and the questions presented are such that we consider it necessary to set out the petition in full. Omitting caption and signature, it reads:

### "COUNT ONE.

"The plaintiff, Philip Karrigan, for Court One of his cause of action against the defendants, states:

### "I.

"The plaintiff, a bachelor, is a resident of and his true address is Bala, Riley, Kansas. That there is not other person in the Clay Center vicinity with the same or like name of the plaintiff, who is in Clay Center a lot and who is well acquainted in Clay Center and has spent practically all of his lifetime in Clay Center and the Clay Center vicinity, which includes the unincorporated town of Bala and a rural area known as Bala which is served by the defendants' newspaper.

### "II.

"The defendants are residents of Clay Center, Clay County, Kansas; their true address is the same and as copartners they do business as the Clay Center

Publishing Company, at the same address by publishing a newspaper, 'The Clay Center Dispatch', which they edit and manage and distribute in the general territory of Clay Center, Kansas, which includes Bala, Kansas community.

"III.

"The defendants, on the 3rd day of November, 1956, published in said Clay Center Dispatch certain false, defamatory, malicious, and libelous language of and concerning this plaintiff and his relations with a woman of ill repute as follows, to-wit:

" 'Stork-O-Grams. Ellen Marie is the name Mr. and Mrs. Phillip Karrigan of Clay Center gave to their daughter, who was born Thursday, Nov. 1, at the Clay County Hospital. The little girl weighed nine pounds, three ounces.

" 'The Karrigans have two other children, Gary, 7 and Timothy, 3.

" 'Grandparents are Mr. and Mrs. E. H. Carpenter of Lovell, Wyo. Great grandparents are Mrs. Ida Davis of Clay Center and Mrs. Kate Carpenter of Omaha, Nebraska.'

"IV.

"By reason of the said publication of the above false, scandalous and defamatory libel by the defendants, this plaintiff has been brought into public scandal and disgrace and greatly injured in his good name to his damage in the sum of $25,000 and that by reason of the maliciousness of said acts, the defendants should be required to pay punitive damages in the sum of $25,000.

"WHEREFORE, plaintiff prays that he have and recover of and from the defendants and each of them the sum of $25,000 as compensatory damages and the further sum of $25,000 for punitive damages, and his costs herein.

"COUNT TWO.

"The plaintiff, Philip Karrigan for Count Two of his cause of action against the defendants states:

"I.

"That he adopts each and every allegation contained in Paragraphs I, II, and III of Count One hereof as fully as though the paragraphs were herein set forth.

"II.

"By defendants' false, negligent, scandalous and defamatory public charge of and concerning this plaintiff as set forth in Paragraph III of Count One of this cause of action, the defendants and said published article meant, and the many readers of the article understood that the plaintiff was married to one Betty Ellen Carpenter, a woman of ill repute and who has given birth to four children out of wedlock. That no announcement of this marriage had ever been made in this vicinity where said parties live; that said plaintiff also has three children by said Betty Ellen Carpenter and that he is not a bachelor by any means and has apparently been married to Betty Ellen Carpenter for at least eight years as the records of the District Court of Clay Center, Kansas show that she was divorced on the 3rd day of May, 1944, from Hubert B. Ciepluch, then remarried to Warren Gene Kamphous on the 5th day of June, 1944, and again divorced from said Kamphous on the 9th day of October,

1946; that according to the above court records, no children were born of said marriage.

## "III.

"That said defendants, having full knowledge and/or should have had full knowledge of the fact that the plaintiff was not married to the said Betty Ellen Carpenter, as aforesaid, willfully and maliciously published and circulated the foregoing described libelous article to lead the subscribers of said newspaper and the public generally to believe said article, and that the people of the surrounding territory of Clay Center by reason of the said implications contained in article were and are caused to believe that the plaintiff is guilty of being disreputable, dishonest, and unfair, and that the said Philip Karrigan is this said plantiff.

## "IV.

"Aforesaid article's implications did, do, and will tend to provoke plaintiff to wrath and expose him to public hatred, contempt, ridicule, and deprive him of public confidence and social intercourse, and that the same was wantonly, negligently, and maliciously published and circulated in this general territory and many places elsewhere.

## "V.

"Plaintiff further states that by reason of the said false, defamatory and libelous publication against him, the plaintiff has been subjected to humiliating gossip, great mental anguish, suffering and disgrace to his damage in the sum of $24,485. Further, by reason of the aforesaid acts and the result thereof, it was necessary for this plaintiff to make one long distance telephone call to consult with his attorney to his damage of $.60 (sixty cents).

## "VI.

"Further as a result of said aforesaid acts, the plaintiff was compelled to make three trips from Manhattan, Kansas, to Clay Center to his approximate damage of $15.00.

## "VII.

"Further as a result of said aforesaid acts, the plaintiff was compelled to employ an attorney to his cause and damage of $500.

## "VIII.

"Further by reason of the aforesaid acts the defendants should be required to pay punitive damages in the sum of $25,000.

"WHEREFORE, plaintiff prays that he have and recover from the defendants, and each of them, the sum of $25,000 as special damages and the further sum of $25,000 for punitive damages and his costs herein."

It is the contention of plaintiff that count one of his petition states a cause of action for libel *per se,* and that count two states a cause of action for libel *per quod.*

Defendants, of course, contend otherwise.

Consideration of the question necessarily involves a discussion of the two types of libel.

Words libelous *per se* are words which are defamatory in themselves and which intrinsically, by their very use, without innuendo and the aid of extrinsic proof, import injury and damage to the person concerning whom they were written. They are words from which, by the consent of mankind generally, damage follows as a natural consequence and from which malice is implied and damage is conclusively presumed to result. Where libel *per se* is claimed the question presented is whether the words on their face, without explanation or extrinsic proof, would necessarily, or as a natural and immediate consequence cause injury and whether a newspaper article is libelous *pe se* is a question of law for the court to determine. (*Jerald v. Houston* 124 Kan. 657, 261 Pac. 851; *Bennett v. Seimiller,* 175 Kan. 764, 267 P. 2d 926; *Koerner v. Lawler,* 180 Kan. 318, 304 P. 2d 926; 33 Am. Jur., Libel and Slander, § 5, p. 39, *et seq.,* and 53 C. J. S., Libel and Slander, § 8, p. 41, *et seq.*)

Words libelous *per quod,* on the other hand, are words ordinarily not defamatory but which become actionable only when special damages are shown, that is, they are words the injurious character of which appears only in consequence of extrinsic facts. Thus, words not defamatory *per se,* may become actionable *per quod,* depending upon the facts and circumstances of the particular case, and this gives rise to the rule that in order to recover for a libel *per quod* special damage and injury must be alleged and proved. (See authorities above cited.)

Tested by these general principles, may it be said the published article constitutes a libel *per se?*

We think not.

Standing alone, the article contains nothing of a defamatory or derogatory nature, and merely follows the pattern of the usual and common birth-announcement notices carried in newspapers. It does not accuse plaintiff of crime or immoral or reprehensible conduct of any kind. To the reader it is a routine announcement of the legitimate birth of a child in the local community. Without further discussion we hold that count one of the petition fails to state a cause of action for libel *per se,* and as to such count defendants' demurrer was properly sustained.

This leads, therefore, to the question whether count two of the petition states a cause of action for libel *per quod.*

Determination of this question depends upon whether plaintiff has sufficiently pleaded special damage and injury to him resulting

from the publication. The petition has been set out in full, its detailed allegations speak for themselves, and will not be repeated. While it is true that plaintiff has not alleged special damage to his trade, profession or business—if he is so engaged—we think it would be incorrect to hold that recovery in an action for libel *per quod* is restricted and limited merely to damage of that nature. In other words, pecuniary loss to one's trade, profession or business should not be the sole test in a case of this kind. The article in question being nondefamatory on its face, plaintiff, in order to state a cause of action for libel *per quod,* was required to allege explanatory extrinsic facts in connection with the subject of the article and the resulting special damage and injury to him.

Has he done so?

Of a certainty, libel *per quod* cannot be created out of thin air, and in order to support a recovery evidence of the damage and injury resulting must be definite and substantial, not fictitious or imaginary. It may be that plaintiff will be unable to prove his allegations, including those as to special damage to him. It may well be that defendants have a valid defense to the action, but with those matters we are not concerned at the present time. Nevertheless, after a most careful study of the petition, we are constrained to hold that, in view of all the facts and circumstances pleaded, it may not be said that count two thereof fails to state a cause of action for libel *per quod.*

In passing, it should be stated that our conclusion in this matter is in no way based upon the items of expense and attorney fees mentioned in the petition, none of which, in the absence of a statute so providing, is properly recoverable in an action of this kind.

The result, therefore, is this:

Count one of the petition fails to state a cause of action for libel *per se,* and as to it the demurrer was properly sustained. Count two of the petition states a cause of action for libel *per quod,* and as to it the demurrer was erroneously sustained.