No. 45,502

THEODORE POPP, *Appellant*, v. LESTER POPP and PAULINE POPP, *Appellees*.

(461 P. 2d 816)

Opinion filed December 6, 1969.

*Arthur C. Hodgson*, of Lyons, argued the cause, and *James G. Kahler*, of Lyons, was with him on the brief for appellant.

*Max Eberhart*, of Great Bend, argued the cause, and *H. Lee Turner* and *J. Eugene Balloun*, of Great Bend, were with him on the brief for appellees.

The opinion of the court was delivered by

FATZER, J.: This appeal is from the judgment of the district court, entered on the jury's verdict for the defendants, in an action to recover damages for personal injury based upon the negligence of the defendants in failing to provide a safe place for the plaintiff to work in the mowing of grass and weeds on their premises. The district court overruled the plaintiff's motion for a new trial, and he has appealed. He contends the court erroneously submitted to the jury the question of his assumption of risk, and complains of misconduct of counsel for the defendants.

The plaintiff, Theodor W. Popp, is the brother of the defendant Lester Popp, and the defendant Pauline Popp is the mother of both

Theodor and Lester. Pauline owned the farm upon which she lived with her unmarried son, Lester, who farmed the premises on a sharecrop basis with his mother.

On Sunday, June 28, 1964, the plaintiff drove to the farm home of Pauline and Lester, at the request of Lester, for the purpose of working for the defendants on June 28, and 29, 1964. The plaintiff was regularly employed by Cities Service Oil Company, but had worked for Lester on the farm on weekends and during his vacation. The plaintiff usually helped Lester during harvest, but in 1964 the harvest had been completed before June 29. Sometimes the plaintiff came to the farm just to visit. Lester had a standing agreement to pay the plaintiff for work he did on the farm. Usually Lester would tell the plaintiff precisely what he wanted done.

On Monday, June 29, 1964, Lester left the farm on an errand without giving the plaintiff any specific work instructions. The plaintiff noticed that the area around the farm house and shop building needed to be mowed and since he had on prior occasions been instructed by Lester to mow that area, he undertook to mow the area with a rotary power mower without any instructions from either defendant. He used a power mower which he, the plaintiff, owned.

While operating the power mower, it struck a piece of galvanized wire which was on the ground, and the wire was propelled into the plaintiff's leg causing the injury. Lester did not return to the farm until after plaintiff was injured.

The plaintiff's petition alleged negligence on the part of the defendants in allowing debris such as the piece of galvanized wire to accumulate on their farm premises and failure to provide plaintiff a safe place to work.

The defendants' answer denied negligence on their part, and alleged the plaintiff was a mere licensee; that he was guilty of contributory negligence, and that he assumed the risk of operating the power mower at the time and place the injury occurred.

Following a pretrial conference and order in which the issues raised in the pleadings were stipulated by the parties, trial was had to a jury which returned a general verdict for the defendants. With full concurrence and the agreement of counsel for both parties, the district court submitted three special questions to the jury, which questions and the jury's answers are as follows:

"QUESTION No. 1: Do you find that the plaintiff was an employee or a licensee of the defendants?

"ANSWER:

(a) Employee: Yes

(b) Licensee:   .   .   .

"QUESTION No. 2: If your answer to question No. 1 is that the plaintiff was an employee, then state who was his employer.

"ANSWER:

(a) Both Lester and Pauline Popp: · Yes

(b) Lester Popp:   .   .   .

(c) Pauline Popp:   .   .   .

"QUESTION No. 3: If you find that the plaintiff was an employee, do you find that the plaintiff assumed the risk involved in his employment?

"ANSWER:

(a) Yes: Yes.

(b) No:   .   .   ."

In harmony with the jury's verdict and its answer to special question No. 3, the district court entered judgment in favor of the defendants and each of them and against the plaintiff.

The plaintiff's motion for a new trial alleged among other grounds, the district court erred in submitting the question of assumption of risk by the plaintiff to the jury, and newly discovered evidence.

Lester Popp was subpoenaed to appear before the district court at the hearing of the motion for a new trial to testify on behalf of the plaintiff. The motion was heard on September 1, 1967, and Lester testified, among other things, that his attorney, Mr. Lee Turner, of the Barton County Bar, had told him that if he did not cooperate with his insurance company in the defense of the lawsuit, and testify favorably for their side of the case, he, Lester, would not be able to get any more insurance. The district court overruled the motion, and the plaintiff perfected this appeal.

The plaintiff first contends the district court erred in submitting the question of the plaintiff's assumption of risk to the jury, and argues the question was one of law to be determined by the district court. We think the plaintiff may not now complain.

At the conclusion of the evidence, the district court raised the question whether the issue of assumption of risk should be submitted to the jury. Counsel for the parties agreed the question was one to be determined by the jury. No instructions are contained in the record and we must assume the jury was fully and correctly instructed on all questions of law with respect to the issues stated

in the pretrial order and as disclosed by the evidence. Likewise, there is nothing in the record to indicate that counsel for the plaintiff objected to any of the instructions given by the district court, or that he requested instructions which were refused.

At the hearing on the motion for a new trial, counsel for the plaintiff argued he was not taking two positions, and stated:

". . . I recall the Court asking counsel for the plaintiff if this was a proper thing for determination by the jury and I remember my answer was I thought it probably was. I have come to the conclusion probably it should not have been submitted to the jury, which I realize is a contrary position to what I informed the Court during trial . . ."

It is evident that in this appeal the plaintiff seeks to mend his hold. Having agreed to submit the question of assumption of risk to the jury and having been defeated on the point, the plaintiff may not now complain. He is precluded from doing so by a well-settled principle of law. Where a party procures a court to proceed in a particular way and invites a particular ruling, he is precluded from assailing such proceeding and ruling on appellate review. (*Manhattan Bible College v. Stritesky*, 192 Kan. 287, 387 P. 2d 225.) Parties are bound by stipulation fixing the issues, or eliminating particular issues, or inducing the district court to try an action on a particular theory, or following a particular procedure. In *Gilliland v. Kansas Soya Products Co.*, 189 Kan. 446, 370 P. 2d 78, this court said:

". . . It has long been the rule of this court that where a party induces the trial court to try an action upon his own theory he is not in a position to complain on review that such theory was erroneous. (Citation.) Where counsel for one party causes or invites a particular ruling, such party cannot later argue that such ruling was erroneous. (Citation.) It is elementary that a litigant cannot take contrary positions, one in which he has sought and procured an order, ruling or judgment in the trial court and another in the supreme court in which he complains of such order, ruling or judgment; moreover, a litigant will not be heard on an appeal to complain of any order, ruling or judgment of the trial court which he suffered the trial court to make without objection. (Citation.) One who by his own act invites and leads the court into erroneous action cannot complain of it nor take advantage of the ruling. (Citations.) For other citations see West's Kansas Digest, Appeal and Error, § 882 (1); 1 Hatcher's Kansas Digest [Rev. Ed.], Appeal and Error, § 440." (l. c. 451, 452.)

It is next contended that because of threats and coercion made upon Lester by counsel for the defendants that if he did not testify favorably to their side of the case Lester could not procure any more insurance, resulted in false, inconsistent and evasive testimony by

Lester at the trial. The question was disposed of at the hearing on the motion for new trial. Counsel for the defendants stated and the district court responded as follows:

"Now, if the Court feels this one statement Mr. Popp made is a material statement—that is, the statement that Mr. Turner told him that he couldn't get insurance—then I would want the Court to continue the hearing on this so that Mr. Turner's testimony could be presented on that point.

"THE COURT: No; I'm not upset about that; I'm a little upset when he believed that Mr. Turner told him he couldn't get any more insurance, but I know Mr. Turner didn't tell him he couldn't get any more insurance. He said, 'If you don't cooperate your insurance is not going to be effective because there is a provision in the policy that said you must cooperate in and assist in the defense', and I'm sure Mr. Turner's comments to him were correct, but you see what has happened, Mr. Turner was dealing with a layman and he tells him these things and he gets the idea he's really boxed-in and he's got to do something. We lawyers are prone to take too much for granted that lay people who listen to us understand us and they don't, and this is probably a case where this man thought that he couldn't ever get any insurance if he didn't cooperate in the case and bring these successful results in this case. I don't think there is any doubt—I think he's about that smart and that isn't very smart, but I don't think Mr. Turner did anything wrong in any way except the same thing all lawyers do and just generally we talk our language and understand ourselves and we expect other people to understand and they don't. That is my concept of what happened. I think the next time he has a case and you have one and Art Hodgson has one and we get this situation, you should explain it to them what it is and then explain it again, and maybe a third time. It might take the third time. What did you do this morning? I noted you asked him a question and he hadn't the slightest idea what you meant, because you were using the language we use, here. We do that all the time and I don't blame Mr. Turner. Now that is what has happened."

The district court heard and saw all that transpired and its observation on the point was that the jury's verdict was not the result of misconduct of counsel and that the plaintiff's rights were not prejudicially affected by anything that occurred at the trial. A district court is in a much better position than an appellate court to determine whether a verdict resulted, wholly or in part, from asserted misconduct of counsel, and, generally speaking, its conclusions in the matter will not be disturbed unless, under all the circumstances, it is plainly in error. (*Smith v. Cement Co.*, 86 Kan. 287, 120 Pac. 349; *Ely v. Jones*, 110 Kan. 10, 202 Pac. 609; *Collins v. City Cab Co.*, 192 Kan. 394, 388 P. 2d 597.)

We are of the opinion we would not be justified in disturbing the findings of the district court and its conclusion the plaintiff's motion for a new trial should be overruled.

The record has been fully reviewed and the plaintiff has not affirmatively established that the alleged errors prejudicially affected his substantial rights.

The judgment of the district court is affirmed.