No. 47,460

DWANE GRIMM, *Appellant*, v. E. E. "PETE" PALLESEN AND JAMES PALLESEN, *Appellees.*

(527 P. 2d 978)

Opinion filed November 2, 1974.

*Paul W. Clark,* of Topeka, argued the cause, and *William L. Stevenson,* of Hiawatha, was with him on the brief for the appellant.

*Charles Rooney, Sr.,* of Topeka, argued the cause, and *Harry E. Miller,* of Hiawatha, was with him on the brief for the appellees.

The opinion of the court was delivered by

FOTH, C.: This is an action for the dissolution of an alleged partnership. The trial court found that no partnership ever existed and rendered judgment for the defendants. Plaintiff appeals, contending the evidence shows a partnership as a matter of law, or in the alternative that the trial court should at least have determined what the actual relationship of the parties was and rendered an accounting among them.

The trial court made extensive findings of fact, none of which are disputed on appeal. From them we find the following:

Plaintiff Dwane Grimm was married to the former Carolyn Pallesen, daughter of the defendant E. E. "Pete" Pallesen and sister of the defendant James Pallesen. He was raised on a farm in Brown county and in his youth worked in the dairy business. In the early

1960's he took up barbering, and worked in the Kansas City area. He was so engaged when, in late 1969 and early 1970, he approached his in-laws about the prospects of joining them in their farming operations.

The Pallesens were engaged in feeding cattle and farming some 1100 acres in Brown and Nemaha counties. The senior Mr. Pallesen owned all the land in joint tenancy with his wife except for 97 acres in which son James was also a joint tenant. Their arrangement was that the 61 year old Mr. Pallesen furnished the land and a full line of farming equipment, while the 25 year old James did most of the work. Each kept separate books, each received one-half of the gross income, each paid one-half of the expenses; they were not partners. They were, however, full partners in a grain elevator at Goff, Kansas. Their income tax returns reflected the distinct nature of the two enterprises and the difference in the legal relationships; i.e., as farmers they filed as individual entrepreneurs, as elevator operators they filed partnership returns.

The Pallesens were receptive to plaintiff's overtures, and the three discussed how they could produce enough cash income to support all three families. It was determined that they would start a dairy operation, but there was no specific agreement as to their business relationship, ownership of property or division of profits. There was never a written agreement.

Plaintiff nevertheless sold his home and his interest in one of two Lenexa barbershops, and in late October, 1970, moved his family into the Fairview home of his father-in-law. (He later made a down payment on and moved into a mobile home, which he located on the Pallesen farm.) He brought with him the $11,000 proceeds from his Lenexa property, which he deposited in a Fairview bank. Later $10,000 of this money was placed in an account designated the "Pallesen Dairy" account.

Over the winter this account was used to erect a dairy barn on the Pallesen land. When it was depleted, in April, 1971, Mr. Pallesen deposited $4,000 to the account, and furnished $1,500 to plaintiff for personal expenses. In May, Mr. Pallesen put another $10,000 into the account, and in June yet another $10,000 was contributed, this time by James.

While completing the barn all three parties looked for dairy cows. All three parties viewed several herds, and a consensus was reached that certain cows would be suitable. When time to pur-

chase the cows arrived, plaintiff and James each withdrew $2,400.00 from the "Pallesen Dairy" account and placed this amount in the personal account of each. Each used this money for the purchase of the cows, and each individually borrowed the balance of the purchase price from the bank. As security, each individually executed a security interest in an undivided one-half interest in the total number of cows.

Plaintiff and James began milking in June, 1971. These two went to the company that was to purchase their milk, and sought to have two seperate checks issued for the milk, equal in amount, payable one check to each of them. This was against company policy, and the company would issue only one check for the total milk at any one delivery. In each instance, therefore, plaintiff and James divided the milk check equally, and each placed one-half in his own individual checking account. They bought commercial feed from the Goff elevator (at the elevator's cost) and plaintiff and James each paid one-half of the feed cost. These expense items were paid from the individual checking account of each.

As the spring and summer of 1971 wore on friction developed among the parties, and there were severe personality conflicts. Mr. Pallesen finally announced to plaintiff that they could no longer work together, and he would have to leave. About October 1, 1971, plaintiff left the dairy operation.

Settlement negotiations between the parties failed, and in June, 1972, plaintiff brought this action, claiming to be a one-third partner with the Pallesens and claiming a one-third ownership in all the land, all the farm machinery, all the crops and all the cattle. As to these contentions the trial court made the following findings, which we deem fatal to plaintiff's claims:

"When it came to set up the books as to operations for the dairy operation, defendants specifically voiced objection to the creation of any partnership between or among them.

"There was never any agreement between the parties relating to the money put into the barn cost by Mr. Pallesen.

"The officers of the Farmers State Bank, Fairview, Kansas, were never told of any partnershp, nor did the bank treat the dairy operation as a partnership.

"There was no serious discussion as to what the legal arrangement would be between or among the plaintiff and defendants until a meeting with Mr. Dixon, Farm Management Association, in March of 1971, in regard to how the books for the dairy should be set up. Mr. Dixon explained the various legal relationships possible, individual, partnership, or corporate. Mr. Pallesen flatly rejected partnership between the parties or among the parties. It was

agreed that James and plaintiff would each be on a 50-50 basis as to gross receipts of the milk sales, and on cost of operations, but there was not to be a partnership. Plaintiff and James set up separate books on the dairy operation, and each kept his individual books of account; there were no joint books kept. In charging food cost, the Goff elevator charged ½ of each dairy feed purchase to plaintiff and James, each; no joint charge account was created. There never was any agreement as to what interest, if any, Mr. Pallesen had in the milk operation or what he was to receive from use of his land, it is clear, however, that Mr. Pallesen was not to receive any of the milk money.

"Mr. Pallesen at all times was trying to treat plaintiff the same as he did his own son, James, and to help out with his financial backing; at no time did he ever intend to enter into any partnership relationship with plaintiff, or for that matter, with James, on the dairy operation; at no time did he ever intend to take, or take, any income from the dairy operation; at no time did he ever intend that plaintiff would have any interest whatsoever in the land other than that plaintiff and James were permitted to use the land as aforesaid for the dairy purposes. Defendants have never claimed any interest in plaintiff's mobile home or in plaintiff's one-half of the cows and increase.

"James was familiar with the legal relationship of a partnership, inasmuch as he and his father are partners in the elevator operation. However, James and Mr. Pallesen were not partners on the farming operation, but, rather, it was a mutually satisfactory arrangement whereby each received one-half of the gross receipts, and each paid one-half of the cost of operation. This latter was the same type of operation contemplated by James with plaintiff on the dairy operation. At no time did James intend to enter into a partnership with plaintiff on the dairy operation."

The court went on to cite a number of our cases and other authorities dealing with the elements of a partnership, and observed that "Many tests are set out in the various cases, but it is also axiomatic that one may not be made a partner (as between the parties, and not involving third parties) against his will or by accident or by the conduct of others, for the reason that partnership is the result of contract, of agreement. Of all the tests set forth, the most important element involved, it seems to the Court, is intent. What did the parties intend?"

The court reached the following conclusions on that issue:

"The court specifically finds and concludes that the defendants did not intend the creation of a partnership relationship between or among them, or either or any of them.

"The court does not believe the evidence of plaintiff wherein he claims there was an agreement with Mr. Pallesen, that this was to be a ½ interest partnership.

"The court concludes that no partnership was created and generally finds for the defendants."

In challenging these conclusions on appeal plaintiff asserts that the record reflects a concurrence of many of the recognized ele-

ments of a partnership, citing our leading case of *Potts v. Lux*, 161 Kan. 217, 222, 166 P. 2d 694:

"Numbered among the often approved tests to which we have referred are the following: Intention of parties to the contract; sharing in profits and losses; charging of losses against accumulated profits; community of control over management and direction of the business; active participation in management of the affairs of the enterprise; joint control and exercise of ownership over all or part of the business assets; participation in division of the net earnings; sharing in payment of expenses of operation; fixing of salaries by joint agreement; investment in the business of undistributed profits for the purpose of building up a substantial cash reserve; division of undistributed profits in the event of liquidation contingent upon repayment to one of the parties of cash originally invested in capital."

In that case the court declined as a fruitless enterprise to cite and analyse the multitude of decisions setting forth the various tests of partnership, observing (p. 221-2):

". . . It will suffice to say that they make one thing crystal clear. It is that the question whether a partnership exists as between particular individuals in a given case is not to be determined by reference to decisions where the factual situation is dissimilar but *depends in each instance upon the intention of the parties to the arrangement, the terms of the agreement creating their relationship* and the facts and circumstances evidencing the manner in which their business affairs are carried on once that relationship has been established." (Emphasis added.)

Plaintiff points out that each of the parties contributed capital and labor to the enterprise, and each participated in the decision-making process. He is met, however, with the unchallenged and unequivocal findings of the trial court that neither of the Pallesens ever intended to become his partner, and that Mr. Pallesen flatly and specifically refused to enter into such a relationship. We have observed:

". . . It has . . . been repeatedly declared that a man can not be made a partner against his will, by accident, or by the conduct of others, for the reason that partnership is a matter of contract. [Citations omitted.] Nor will it arise by operation of law. The courts will no more create such a contract against the will of a party than they will contracts of any other character." *Wade v. Hornaday*, 92 Kan. 293, 296, 140 Pac. 870. See also, *Whan v. Smith*, 130 Kan. 9, 285 Pac. 589.

On the defendants' side, it is clear they wished to enter into some sort of business relationship with the plaintiff. They knew what a partnership was—they were engaged in one at the elevator. They expressly did *not* wish that to be the relationship. They also knew what a non-partnership sharing of receipts and expenses was—they

had that relationship in their farming. They (or at least James) opted for the same relationship with plaintiff in the dairy business. No third parties are involved, so the question of holding-out or estoppel does not arise. We think the trial court correctly refused to declare them partners against their will.

There remains plaintiff's claim that the trial court should nevertheless have settled the parties' accounts. It is clear, he says, that there was at least a joint venture in the dairy business, and there must be some balance due one way or the other. The trouble with that is, plaintiff was the one to frame his claim for relief. To claim only an interest in the dairy barn might have meant foregoing his claim to one-third of the land, machinery and livestock. (His one-half interest in the dairy cattle had already been foreclosed by the bank.) The question was squarely put to plaintiff's counsel by the trial court:

"THE COURT: Mr. Clark, I take it that you are urging the Court *to find a full partnership between all three,* which would then result in what? Grimm owning a third of all this land, and I suppose the cattle and machinery and everything, right?

"MR. CLARK: *Yes, sir,* as well as being one-third toward the indebtedness on the land.

"THE COURT: Now suppose, what I am getting at, I am not at all sure all of the loose ends will be wrapped up in one decision. Let's assume the Court *doesn't find a partnership between any of these* people. Does that end the case?

"MR. CLARK: I think—

"THE COURT: Let's put it this way, not that the Court doesn't mind, the Court finds there was no partnership between any of these three people, *does that end the case as far as you are concerned?*

"MR. CLARK: *That would end the case on the partnership yes,* Your Honor: I still think on the question of whether or not Grimm has something coming back—

"THE COURT: *Would that be a separate lawsuit?*

"MR. CLARK: We went into that, as you recall, during trial or just prior to trial.

"THE COURT: Yes.

"MR. CLARK: Of wondering whether the Court, in this lawsuit, could determine whether something is owing perhaps as a crossclaim offer and *I would think, technically, if the Court found no partnership between any of these people period, that that would end this lawsuit and Mr. Grimm would have to proceed in another lawsuit to recover whatever he had coming."* (Emphasis added.)

In the face of these statements of counsel the trial court had no alternative but to render judgment for the defendants, once it found

no partnership existed. Plaintiff cannot now urge on appeal a claim for relief which was not only not urged below but was expressly withdrawn from the trial court's consideration. "Where a party procures a court to proceed in a particular way and invites a particular ruling, he is precluded from assailing such proceeding and ruling on appellate review." (*Popp v. Popp*, 204 Kan. 329, 332, 461 P. 2d 816. See, also, *Manhattan Bible College v. Stritesky*, 192 Kan. 287, 387 P. 2d 225 and *Gilliland v. Kansas Soya Products Co.*, 189 Kan. 446, 370 P. 2d 78.)

The judgment is affirmed.

APPROVED BY THE COURT.