(594 P 2d 251)

No. 49,720

CLEMON W. HENDERSON, JR., *Appellant,* v. DWAYNE M. RIPPERGER
d/b/a EASTBORO PHARMACY, *Appellee.*

Opinion filed May 4, 1979.

*Fred W. Phelps, Jr.,* of Fred W. Phelps—Chartered, of Topeka, for appellant.
*James P. Nordstrom,* of Fisher, Patterson, Sayler & Smith, of Topeka, for appellee.

Before ABBOTT, P.J., REES and MEYER, JJ.

REES, J.: Plaintiff appeals from an adverse order of summary judgment entered in his action against defendant.

The material portion of plaintiff's petition, that which sets forth his short and plain statement of the claim showing his entitlement to relief (see K.S.A. 60-208), was as follows:

"1. On March 12, 1977, in Shawnee County, Kansas, plaintiff was a business invitee at defendant's lunch counter at 3154 E. 6th Avenue, Topeka, Kansas, ate breakfast and paid therefor; upon leaving plaintiff was loudly accosted by defendant's agent servant and employee acting within the scope of authority, who demanded to know why plaintiff had not paid for said coffee and who would not accept plaintiff's statement that he had indeed paid for said breakfast.

"2. Plaintiff was thereupon slandered in the presence of numerous persons in said business establishment, wrongfully detained by defendant's further agent acting within the scope of authority, and suffered damages thereby."

After filing his answer, defendant deposed plaintiff and then filed a motion for summary judgment stating it was for "Summary Judgment on plaintiff's petition." In support of his motion and as called for by Rule No. 141 (223 Kan. lxvi), defendant filed a memorandum that included the following twelve contentions of fact that plaintiff subsequently acknowledged were not controverted:

"4. Both prior to the incident complained of by plaintiff in this lawsuit and subsequent to the incident, plaintiff was a regular customer of the Eastboro Pharmacy.

"5. At all times prior to March 12, 1977, plaintiffs relationship with Eastboro Pharmacy had been good.

"6. On the morning in question, plaintiff was served at the Eastboro Pharmacy by Mary Simmons, an employee of Eastboro Pharmacy.

"7. On the day in question, March 12, at the time plaintiff ordered his food he received his ticket and paid prior to eating the food.

"8. At the time plaintiff got up to leave on March 12, 1977, Mrs. Simmons was outside of the premises attending to other business and the employee of Eastboro Pharmacy attending the lunch counter was one that had not waited on plaintiff.

"9. Plaintiffs version of what the waitress who had not waited on him, said to plaintiff as he got up to leave is as follows:

" 'Just as I was getting ready to leave this other waitress say, "are you going to pay for your coffee?" I said "I'm sorry, are you talking to me?" She said, "Yes", and I said "Well, I've already took care of my meal ticket", you know like that. I kept right on stepping, she said, "Aren't you going to pay for your coffee?", I said, "Lady, I have already taken care of it", and okay so in the mean time she started hollering and I kept on walking, and she said, "Hey, hey, stop him, stop him." People was just running like I was robbing the store or something. So the guy from the pharmacy come and he run out and jumped in front of me, between me and the door, you know, and a really I wanted to hit the guy, but I said, you know, it made me mad. I said to myself, you know, I better not, so anyway, the waitress that had waited on me, about this time this waitress come back in and she said, "this, the guy you're talking about, this is one of our best customers, you don't need to worry about him, you know, paying for his meals and stuff, that he aint going to do nothing like that.'

"10. The whole incident complained of by plaintiff, in plaintiffs' petition, up to the time Mrs. Simmons told everyone that the plaintiff had paid took ten (10) minutes.

"11. When Mrs. Simmons, the Eastboro Pharmacy employee, told everyone that he had paid for the coffee and that plaintiff was one of their best customers plaintiff was made to feel pretty good.

"12. No physical contact was made upon plaintiff by any employee of Eastboro Pharmacy.

"13. At no time did any employee of Eastboro Pharmacy curse or use any type of abusive language towards plaintiff.

"14. Plaintiff at all times pertinent on the day of the incident in question knew no one in the Pharmacy the day in question aside from Mrs. Simmons.

"15. Plaintiff knows of nobody whatsoever who thinks less of plaintiff because of the incident."

The only response made by plaintiff to the summary judgment motion, other than his oral argument at the hearing, was the filing of a memorandum in opposition. When the motion came on for hearing, the only discovery record in addition to plaintiff's deposition were replies to certain interrogatories and to an admissions request, none of which are material to determination of this matter. Plaintiff took no depositions and he filed no affidavits in opposition to the motion. See K.S.A. 60-256(c). No request was made for leave to conduct further discovery. He stood pat.

At the motion hearing, plaintiff stated that in addition to the allegations of the petition he wished to claim entitlement to recovery on the theories of outrage and invasion of privacy. With

defendant's consent, the trial judge announced he would consider the case as if the petition were amended to include these two additional claimed grounds for recovery.

The trial judge filed his written findings of fact (he incorporated the foregoing uncontroverted fact contentions) and conclusions of law and directed entry of summary judgment against plaintiff. In his findings and conclusions, the trial judge expressly discussed the theories of outrage, invasion of privacy and slander. The record on appeal clearly shows that the subject of wrongful detention, which we will refer to as false imprisonment, was not mentioned in any way in the parties' trial court briefs nor was it mentioned at oral argument on the motion.

Plaintiff initially contends the petition alleged false imprisonment and since this theory, or claim, was not briefed, argued or decided in the trial court, the entry of summary judgment was improper. Without having raised or mentioned false imprisonment at any time or in any place in the proceedings in the trial court, except as may be gleaned from the quoted language of the petition, plaintiff argues the trial judge was obliged to acknowledge and rule on that claim. We do not agree.

Defendant's motion for summary judgment was not for partial summary judgment; it was an unqualified request for summary judgment. See K.S.A. 60-256(*a*), (*d*). If it had been urged and argued to the trial judge that the petition alleged a claim for false imprisonment it might be so found. But plaintiff may not now rely upon the omission in the trial judge's findings and conclusions, particularly in the absence of any post-ruling request to the trial judge for alteration or amendment, or if such is within our Code of Civil Procedure, for rehearing. Plaintiff wholly failed to raise the issue before the trial judge. *Cf. Manhattan Bible College v. Stritesky,* 192 Kan. 287, 290, 387 P.2d 225 (1963); *Grimm v. Pallesen,* 215 Kan. 660, 666, 527 P.2d 978 (1974). See also *Goff v. American Savings Association,* 1 Kan. App. 2d 75, Syl. ¶ 1, 561 P.2d 897 (1977).

The principles and rules applicable to consideration, decision and review of rulings on motions for summary judgment need not again be stated. Representative of case authority in this subject area is *Mildfelt v. Lair,* 221 Kan. 557, 561 P.2d 805 (1977).

Insofar as plaintiff's claims for outrage and invasion of privacy are concerned, summary judgment was proper. The conduct of

defendant's employee was not so outrageous or atrocious as to exceed all possible bounds of decency as is required for outrage. *Dawson v. Associates Financial Services Co.,* 215 Kan. 814, 820, 529 P.2d 104 (1974); *Dotson v. McLaughlin,* 216 Kan. 201, 209-210, 531 P.2d 1 (1975); *Wiehe v. Kukal,* 225 Kan. 478, 592 P.2d 860 (1979); *Bradshaw v. Swagerty,* 1 Kan. App. 2d 213, 216, 563 P.2d 511 (1977). To find in this lawsuit there was invasion of privacy would require intrusion upon seclusion, that is, an invasion of plaintiff's private life. *Dotson v. McLaughlin,* 216 Kan. at 207-208. The mere fact of embarrassment and humiliation is insufficient to establish invasion of privacy. Plaintiff was not in seclusion while taking his meal at defendant's establishment. The payment of the bill was very much a part of defendant's business. Defendant's words and conduct did not constitute an intrusion upon seclusion.

The remaining question is whether plaintiff is entitled to proceed on the theory of slander.

There are two types of slander, slander per se and slander per quod. In that slander is oral libel, what is said in *Karrigan v. Valentine,* 184 Kan. 783, 787, 339 P.2d 52 (1959), is pertinent:

"Words libelous *per se* are words which are defamatory in themselves and which intrinsically, by their very use, without innuendo and the aid of extrinsic proof, import injury and damage to the person concerning whom they were written. They are words from which, by the consent of mankind generally, damage follows as a natural consequence and from which malice is implied and damage is conclusively presumed to result. Where libel *per se* is claimed the question presented is whether the words on their face, without explanation or extrinsic proof, would necessarily, or as a natural and immediate consequence cause injury and whether a newspaper article is libelous *per se* is a question of law for the court to determine. (*Jerald v. Houston,* 124 Kan. 657, 261 Pac. 851; *Bennett v. Seimiller,* 175 Kan. 764, 267 P.2d 926; *Koerner v. Lawler,* 180 Kan. 318, 304 P.2d 926; 33 Am. Jur., Libel and Slander, § 5, p. 39, *et seq.,* and 53 C.J.S., Libel and Slander, § 8, p. 41, *et seq.*)

"Words libelous *per quod,* on the other hand, are words ordinarily not defamatory but which become actionable only when special damages are shown, that is, they are words the injurious character of which appears only in consequence of extrinsic facts. Thus, words not defamatory *per se,* may become actionable *per quod,* depending upon the facts and circumstances of the particular case, and this gives rise to the rule that in order to recover for a libel *per quod* special damage and injury must be alleged and proved. (See authorities above cited.)"

The petition and the discovery record are insufficient to raise a justiciable issue as to whether plaintiff is entitled to recover for slander per quod. No allegation of special damages is made and

the discovery record establishes no basis for a finding that plaintiff sustained special damages. A mere allegation of general damages is insufficient for slander per quod. *Bennett v. Seimiller,* 175 Kan. 764, 769, 267 P.2d 926 (1954). Thus, only slander per se is of possible applicability here.

It is said in *Bradshaw v. Swagerty,* 1 Kan. App. 2d at 215, that:

"At common law slander *per se* was limited to four categories: imputation of a crime; imputation of a loathsome disease; words reflecting on plaintiff's fitness for his office, profession or trade; and the imputation of unchastity in a woman. Prosser, Law of Torts (4th ed.), pp. 754-760; 50 Am. Jur. 2d Libel and Slander, sec. 10; 53 C.J.S., Libel and Slander, sec. 14. And *cf.,* Restatement (Second), Torts, sec. 569 (Tent. Draft No. 11).

"No single Kansas case has adopted the common law categories *in toto,* but each of the four has been recognized: *Sweaney v. United Loan & Finance Co.,* 205 Kan. 66, 468 P.2d 124 (imputation of a felony); *Bennett v. Seimiller,* supra (criminal offense, loathsome disease, prejudice to trade or business); *Munsell v. Ideal Food Stores,* 208 Kan. 909, 494 P.2d 1063 (unfitness for employment); *Cooper v. Seaverns,* 81 Kan. 267, 105 Pac. 509 (unchastity)."

Do the words spoken by defendant's employee constitute actionable slander per se, imputation of a crime? Is this to be answered as a matter of law or is this for jury determination?

For what it is worth, the authors of Pattern Instructions for Kansas seemingly deem the question to be one of law. PIK Civ. 2d 14.52 is the only suggested pattern instruction for defamation per se and the authors comment that "this instruction should be given when the court determines as a matter of law that the communicated matter is defamatory per se." They further state that "whether the words are in the per se classification is a question of law for the court to determine," and "if the communication made is defamatory per se the court should instruct the jury that it is defamatory as a matter of law." There is no promulgated pattern instruction for submission to the jury of whether the communicated words are defamatory per se.

In *Bennett v. Seimiller,* 175 Kan. at 767, it is said:

"It is generally held that whether a statement is libelous or slanderous *per se* is, in the first instance, a question of law for the court. [Citations omitted.]

"It is for the court to determine whether a certain word or words as employed reasonably admit of the meaning ascribed to them. (*Doherty v. Kansas City Star* [144 Kan. 206, 59 P.2d 30].) If they are reasonably susceptible of constituting slander *per se* the court leaves it to the jury to say how the word or words were in fact understood."

It appears that the language in *Brinkley v. Fishbein,* 134 Kan.

833, 835, 8 P.2d 318 (1932), that is relied upon in the foregoing quotation in *Bennett* is as follows:

"[G]enerally speaking, interpretation of a writing alleged to be libelous is a matter of law for the court. The court should decide whether words are actionable *per se*. The court should decide whether words could not possibly be defamatory. The court should decide whether words may fairly be susceptible of two meanings, one innocent and the other defamatory."

It would not be unreasonable to conclude the *Brinkley* language does not support, or at least squarely support, the *Bennett* statement that slander per se is a jury issue if the words used are reasonably susceptible of constituting slander per se. Similarly, in *Steenson v. Wallace,* 144 Kan. 730, 734, 62 P.2d 907 (1936), where the substance of the material part of the opinion is that the trial court erred when it effectively held defendant's allegation of libel per se was supported by the factual allegations, it is said:

"The word 'illegal' does not necessarily imply moral turpitude or liability to criminal prosecution. It may imply simply 'not according to law,' or as the subheading said, 'unauthorized.' In this instance, plaintiff could not be punished criminally for charging mileage unless the conduct was exhibited willfully, that is, purposely and intentionally, in the sense of with unlawful intent, or in bad faith. Nothing of the kind is apparent on the face of the record, and the most the district court could say was, that the words were capable of a meaning which imported commission of a crime (*Doherty v. Kansas City Star,* 144 Kan. 206, 59 P.2d 30) and leave it to the jury to say how the words were in fact understood. (See *Brinkley v. Fishbein,* 134 Kan. 833, 836, 8 P.2d 318.)"

It may be said this too is questionable authority for the *Bennett* "reasonably susceptible rule." The authoritativeness of *Doherty v. Kansas City Star,* 144 Kan. 206, 59 P.2d 30 (1936), also is fairly questionable.

Acknowledging recitation of the *Bennett* "reasonable susceptibility rule," that is, a case is submissible to a jury on the theory of slander per se if the court finds the words not slanderous as a matter of law but reasonably susceptible of constituting slander per se, the fact is we find no Kansas case where a or the controlling issue was whether the case was submissible to a jury because of the "rule." In truth, all Kansas defamation per se cases of more recent date than *Bennett* found in our research hold that whether the words spoken were slanderous per se is a question for determination as a matter of law. By way of example, it is said:

"In the case at bar the trial court should have instructed the jury that the charges made by Ideal against Munsell were defamatory as a matter of law rather than

giving a general definition of libel per se." *Munsell v. Ideal Food Stores,* 208 Kan. 909, 921, 494 P.2d 1063 (1972).

"Whether a newspaper article is libelous *per se* is a question of law for the court to determine." *Local Union No. 795 v. Kansans for the Right to Work,* 189 Kan. 115, Syl. ¶ 4, 368 P.2d 308 (1962).

The words spoken to plaintiff must be interpreted without the use of innuendo for if any innuendo is necessary to show the defamatory meaning or application of the language used, the language is not actionable per se. See, *e.g., Thompson v. Osawatomie Publishing Co.,* 159 Kan. 562, 564, 156 P.2d 506 (1945).

From the foregoing, we are satisfied that whether the quoted spoken words of the defendant's unnamed waitress constituted slander per se was a question for decision by the trial court and now for decision by us as a matter of law. These words, *in context,* without innuendo or the aid of extrinsic proof, are as follows:

"[T]his other waitress say, 'are you going to pay for your coffee?' I said, 'I'm sorry, are you talking to me?' She said, 'Yes', and I said, 'Well, I've already took care of my meal ticket' . . . . she said 'Aren't you going to pay for your coffee?' I said, 'Lady, I have already taken care of it' . . . and she said, 'Hey, hey, stop him, stop him.' "

We agree with the trial court that these words did not constitute slander per se.

At the conclusion of the argument in his brief defendant's attorney attempts to assert a motion for costs and fees pursuant to Rule No. 7.07(*b*) (223 Kan. xlv). We decline to consider this motion for the reason that it has not been presented in compliance with Rule No. 5.01 (223 Kan. xxxviii) and even if we were to do so we would be unable to say that the appeal is so utterly without merit as to justify an assessment of award of costs and fees.

Affirmed.