Hector L. BOLDUC and the Society of St. Pius X of Kansas, Inc., Plaintiffs,

v.

James BAILEY, Defendant.

Civ. A. No. 82–Z–455.

United States District Court, D. Colorado.

June 15, 1984.

John C. Frieden, Ralston, Frieden & Weathers, P.A., Topeka, Kan., Kent E. Hanson, Denver, Colo., for plaintiffs.

### ORDER FOR ENTRY OF DEFAULT JUDGMENT

WEINSHIENK, District Judge.

The matter before the Court is plaintiffs' Motion for Judgment on Default. Pursuant to Fed.R.Civ.P. 55(b)(2), the Court has considered the testimony given at the March 9, 1984, hearing on plaintiffs' Motion, and the exhibits received into evidence at that time, as well as the supplemental affidavits and deposition testimony filed by plaintiffs on March 29, 1984. The Court has also considered the legal memoranda submitted by counsel for plaintiffs, and the contents of the case file. After carefully reviewing this matter, the Court is fully advised and prepared to rule. For the reasons stated herein, the Court will grant plaintiffs' Motion and order entry of judgment accordingly. This Order constitutes the Court's findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

## I.  CASE HISTORY

■ This is an unusual case for a default judgment.  Plaintiffs' Complaint sounds in tort and states claims for defamation, invasion of privacy and outrageous conduct by defendant.  Plaintiffs seek compensatory and punitive damages.  Jurisdiction is based on 28 U.S.C. § 1332(a).

Although defendant never has appeared formally in this matter, he has made an effort to keep the Court apprised of his current address for purposes of receiving official Court correspondence.  *See* Letter to Office of the Clerk, United States District Court, dated December 1, 1982, and filed with the Court December 3, 1982. The Clerk's case file contains no mailings which have been returned, and thus the Court concludes that defendant has received notice of the filings, proceedings and hearings in this case, at his last address of record.  There is some indication that defendant's failure to appear in this matter may be due to his belief that plaintiffs' suit is meant only to harass defendant, *see* Ex. K, or that religious dictates prohibit civil litigation between defendant and plaintiffs; *see, e.g.,* Ex. L.  Nonetheless, no response from defendant has been filed in this Court to forestall in any way the granting of the relief requested in the Complaint as provided for by Fed.R.Civ.P. 55(b).  The summons personally served on defendant states clearly that failure to respond to the Complaint will cause such a result.

## II.  FACTUAL BACKGROUND

The evidence reveals the following facts. Plaintiff Hector L. Bolduc (Father Bolduc) is a citizen of Kansas, and a priest of the Roman Catholic Church.  He is a member of plaintiff The Society of St. Pius X of Kansas, Inc. (The Society), an order of the Roman Catholic Church dedicated "to preserv[ing] the traditional rites of the Catholic Church."  Ex. BB.  The Society operates a number of chapels in the United States.  Among other distinguishing characteristics, The Society conducts the Catholic Mass in the traditional Latin rather than in English.

From 1974 to 1984, Father Bolduc held the position of District Superior for The Society's Southwest District.  The Southwest District includes 60 chapels operated by The Society, and comprises the southern and western states of the United States and Mexico.  As District Superior, Father Bolduc was responsible for overseeing the affairs and activities of The Society in those areas.

Defendant James Bailey (Bailey) is a Colorado resident and citizen, self-employed as a private investigator.  Defendant is not a minor or an incompetent person, and is not in the military service.  *See* Hanson Affidavit, filed March 29, 1984.

In March of 1981, Bailey phoned another member of The Society, Father Terence Finnegan, and accused Father Bolduc of (1) improperly transferring Society property to himself; (2) lying about his background and particularly his position in the United States Army; (3) being a traitor who had performed services for the Castro government in Cuba resulting in the death of a number of Cuban "patriots;" (4) being guilty of immoral conduct rendering Father Bolduc unfit to be a priest; and (5) being guilty of violations of criminal law and of "Canon law."  Ex. B.  Despite repeated efforts by Father Finnegan to discuss with Bailey the basis for these accusations, the defendant consistently failed to produce any evidence to substantiate his statements, even after a face-to-face meeting in Denver, Colorado, with Father Finnegan. Although Father Finnegan ultimately became convinced that Bailey's charges lacked any foundation, initially the accusations against Father Bolduc caused Father Finnegan and other members of The Society to have serious doubts about Father Bolduc's integrity, honesty and fitness for his position.  The accusations against Father Bolduc have interfered with his ability to carry out the duties of his position as District Superior, to the point that he was relieved of that position in March of 1984, and is currently awaiting reassignment. Ex. BB.

The Court also heard a volume of other evidence dealing with statements, publications and actions of other individuals, and concerning an incident involving an alleged revolver pointed at Father Buldoc by defendant at St. Mary's College in Kansas. Except as discussed below, this evidence is legally insufficient to support plaintiff's claims against defendant.

## III. DISCUSSION

### A. CHOICE OF LAW

■■■ In a diversity action this Court follows the Colorado courts in determining choice of law issues. *Klaxon Co. v. Stentor Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Vandeventer v. Four Corners Elec. Co., Inc.*, 663 F.2d 1016, 1017 (10th Cir.1981). The rule in Colorado for torts is that the court "will adopt the general rule of applying the law of the state with the most 'significant relationship' with the occurrence and the parties, as presented and defined in the Restatement (Second) Conflict of Laws, § 145 (1969)." *First National Bank in Fort Collins v. Rostek*, 182 Colo. 437, 514 P.2d 314, 320 (1973); *Dworak v. Olson Construction Company*, 191 Colo. 161, 551 P.2d 198, 199 (1976); *Wood Bros. Homes, Inc. v. Walker Adj. Bureau*, 198 Colo. 444, 601 P.2d 1369, 1372 (1979); *Vandeventer*, 663 F.2d at 1018.

While the court in *Rostek* expressed its hope that future cases would elucidate more specific choice of law rules for particular categories of torts, *see* 514 P.2d at 320, no such rules appear to have been developed for the torts alleged in the instant matter. Accordingly, this Court must follow the general principle set forth in *Rostek*, and consider the four factors listed in Restatement (Second) of Conflict of Laws § 145(2) (1969): (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicil, residence, nationality, place of incorporation and place of business of the parties; and (4) the place were the relationship, if any, between the parties is centered.

The facts of this case demonstrate that either Kansas or Colorado might be appropriate jurisdictions for determining the nature and extent of plaintiffs' injuries. Plaintiffs argue that Kansas law should apply, since plaintiffs are citizens of that state, are domiciled there, and suffered a greater portion of their injuries there. This Court will assume that plaintiffs' argument is correct, in the absence of obvious case law to the contrary. In addition, the Court has no reason to believe that the substantive law of either state differs materially with respect to the alleged torts. Accordingly, the Court will examine the evidence in the light of Kansas law.

### B. DEFAMATION CLAIM

■■■ The gravamen of an action for defamation is the damage to one's reputation in the community caused by the defamatory statement(s). *Gobin v. Globe Pub. Co.*, 232 Kan. 1, 649 P.2d 1239, 1243 (1982). The term "defamation" includes both libel and slander. *Id.* Some statements are defamatory per se, particularly words "which instrinsically, without innuendo, import injury. They are words from which damage, by consent of men generally, flows as a natural consequence." *Sweaney v. United Loan and Finance Company*, 205 Kan. 66, 468 P.2d 124, 129 (1970); *see also Mid-America Food Service v. ARA Services, Inc.*, 578 F.2d 691, 697–98 (8th Cir.1978) (construing Kansas Law); *Henderson v. Ripperger*, 3 Kan.App.2d 303, 594 P.2d 251, 255 (1979). Among the categories of statements which are considered under Kansas law as defamatory per se are (1) statements imputing commission of a crime to a person, *Sweaney*, 468 P.2d at 129, including accusations of treason as that word is used in the United States Constitution, *Bennett v. Seimiller*, 175 Kan. 764, 267 P.2d 926, 930 (1954); and (2) statements reflecting adversely on a person's fitness for his office, profession or trade, including accusations of dishonesty or unethical conduct in a profession, *Bennett*, 267 P.2d at 929; *Munsell v. Ideal Food Stores*, 208

Kan. 909, 494 P.2d 1063, 1074 (1972); *Henderson,* 594 P.2d at 255.

■ When a person's statement constitutes defamation per se, an inference of malice is permissible, *Sweaney,* 468 P.2d 129, at least where the defendant is a non-media person or entity. *See Mid-America,* 578 F.2d at 697–98; *cf. Gertz v. Robert Welch,* 418 U.S. 323, 347–48, 94 S.Ct. 2997, 3010–11, 41 L.Ed.2d 789 (1974); *Gobin,* 649 P.2d at 1240–41. It follows that an inference of knowledge of falsity or of reckless disregard for the truth of the statement is likewise permissible, as lesser-included standards of fault.

■ Based on the evidence and on the above recitation of Kansas defamation law, the Court concludes that the first, third, fourth and fifth statements made by defendant to Father Finnegan constitute defamatory statements per se. The Court also concludes that an inference of knowledge of falsity or of reckless disregard for the truth of the statements is supported by the evidence. The Court will not infer malice, however, as the Court concludes that the evidence does not support a finding of that degree of intent. Thus, the Court concludes that defendant is liable to Father Bolduc on the defamation claim and will therefore grant plaintiffs' Motion for Judgment on Default as to that claim, and judgment shall be entered accordingly. However, there is insufficient evidence to support a conclusion that defendant is liable to The Society for defamation, since none of the defamatory statements alleged by plaintiffs concern The Society as a whole. Accordingly, the Court will deny the Motion for Judgment on Default as to The Society's defamation claim, and will dismiss the Complaint on that claim.

■ In addition, the circumstantial evidence demonstrates that Bailey's accusations were repeated by other individuals with whom Bailey was working closely or from whom he received assistance, and who he had reason to know would repeat them. *See* Ex. J, Y, Z, AA. Although there exists no Kansas Law on point, the Court concludes that Kansas would follow the majority rule that a defendant is liable for repetition by third persons of defamatory statements initially made by the defendant, if such repetition was reasonably to be expected. *See* Restatement (Second) of Torts § 576 (1976).

■ "Damages recoverable for defamation may no longer [since *Gertz*] be presumed; they must be established by proof, no matter what the character of the libel." *Gobin,* 649 P.2d at 1242. Once damages for injury to reputation are shown, however, additional damages are recoverable for "wounded feelings and humiliation, and resulting physical illness and pain, as well as estimated future damages of the same kind." *Gobin,* 649 P.2d at 1243, *citing* Prosser, Handbook of the Law of Torts (4th Ed.1971). These additional damages are "parasitic" to the initial proof of damages for injury to reputation. *Id.*

■ Punitive damages may also be awarded in a defamation action. *Sweaney,* 468 P.2d at 131. In Kansas, proof of knowledge of falsity or reckless disregard for the truth is sufficient for awarding such damages in a defamation case. *See Mid-America,* 578 F.2d at 700–01.

Having concluded that defendant is liable to Father Bolduc on the defamation claim, the Court must apply the above rules in calculating damages. Damages in this case are difficult to ascertain, in part because the matter is being considered as a default judgment. The Court has some reservations in accepting at face value the plaintiffs' affidavits of damages, since the evidence is uncontroverted by reason of defendant's failure to appear in this case, rather than because of the evidence's intrinsic reliability. After careful consideration, the Court concludes that Father Bolduc is entitled to recover the amount of $23,500.00 in actual damages, and an equal amount of $23,500.00 in punitive damages, from the defendant.

■ As to actual damages, the Court bases its conclusion on Father Bolduc's affidavit, Ex. BB, which lists the expenses he

incurred in defending himself against defendant's accusations. The Court has allowed Father Bolduc's expenses of $21,000.00 for necessary travel to The Society's international offices in Switzerland, and $2,500.00 for telephone expenses. The Court has disallowed Father Bolduc's claim of $10,000.00 for the value of his time spent in defending himself against defendant's charges, since Father Bolduc is supported by The Society for his living expenses and receives no salary. Ex. BB. Thus the total award of actual damages will be $23,500.00.

The Court also has awarded a like amount of $23,500.00 in punitive damages, based on the Court's finding that an inference of defendant's knowledge of falsity or reckless disregard for the truth is justified. This Court concludes that such an award is supported by the evidence, and the Court believes that the amount should be equal to the actual damage caused.

## C. INVASION OF PRIVACY CLAIM

Kansas has recognized the tort of invasion of privacy. *Rinsley v. Brandt*, 700 F.2d 1304, 1307 (10th Cir.1983). Plaintiffs allege the type of invasion of privacy which places another in a "false light." *See* Restatement (Second) of Torts § 652E (1976). Despite a similarity of elements, "false light" invasion of privacy and defamation are distinct and independent torts, due to the different injuries caused. While defamation involves injury to reputation, *see* Part III B *supra*, invasion of privacy involves injury to the person, primarily through mental and emotional distress. *Rinsley*, 700 F.2d at 1307.

Initially, the Court does not believe that an association of individuals, such as The Society, may claim collectively an invasion of privacy, particularly since the rule on damages appears on its face to refer to individual persons. Thus the Court will deny plaintiffs' Motion for Judgment on Default as to The Society's claim for invasion of privacy, and will dismiss the Complaint on the invasion of privacy claim as to The Society.

As to Father Bolduc, the Court concludes that the evidence supports liability of the defendant for invasion of privacy, and will grant plaintiffs' Motion to that extent. However, the Court has seen no evidence to support an award of actual damages separate and independent of the amount awarded for the defamation claim. While plaintiffs need not prove special damages to recover for mental and emotional distress caused by the invasion of privacy, *see Johnson v. Boeing Airplane Co.*, 175 Kan. 275, 262 P.2d 808, 813 (1953); *Manville v. Borg-Warner Corporation*, 418 F.2d 434, 437 (10th Cir.1969); *Monroe v. Darr*, 221 Kan. 281, 559 P.2d 322, 327 (1977), to the extent that Father Bolduc is so entitled, the Court believes that the defamation damages award fairly includes compensation for those aspects. *See also Gobin*, 649 F.2d at 1243. Accordingly, the Court will enter judgment for Father Bolduc on this claim in the amount of $1.00 in nominal damages.

## D. OUTRAGEOUS CONDUCT CLAIM

In *Dawson v. Associates Financial Services Co.*, 215 Kan. 814, 529 P.2d 104, 111 (1974), Kansas recognized the tort of outrageous conduct, as set forth in Restatement (Second) of Torts § 46(1) (1964). Cases which have considered what type of conduct is "outrageous" indicate that the threshold is a high one: "conduct to be a sufficient basis for an action to recover for emotional distress must be outrageous to the point that goes beyond the bounds of decency and is utterly intolerable in a civilized society." *Roberts v. Saylor*, 230 Kan. 289, 637 P.2d 1175, 1179 (1981); *see also Hanrahan v. Horn*, 232 Kan. 531, 657 P.2d 561, 566 (1983); *Hoard v. Shawnee Mission Medical Ctr.*, 233 Kan. 267, 662 P.2d 1214, 1223–24 (1983).

Based on the evidence presented in this case, the Court concludes that defendant's conduct does not rise to the level of outrageous conduct. In part the Court bases this conclusion on the existence of other, sufficient remedies for plaintiffs.

Defamation and invasion of privacy are reprehensible activities, to be sure, but not altogether unknown or even uncommon in our free society. Defendant's conduct, while actionable as to plaintiffs' other claims, is not the sort of conduct which rises to the requisite level of outrageous conduct. Thus, the Court will deny plaintiffs' Motion for Judgment on Default as to the outrageous conduct claim.

## IV.   CONCLUSION

In accordance with the foregoing discussion and analysis, it is

ORDERED that plaintiffs' Motion for Judgment on Default is granted in part and denied in part. It is

FURTHER ORDERED that plaintiffs' Motion is denied on all claims of plaintiff The Society of St. Pius X of Kansas, Inc., and the Complaint and cause of action are dismissed with prejudice as to that party. It is

FURTHER ORDERED that plaintiffs' Motion is denied as to plaintiff Hector L. Bolduc's claim for outrageous conduct, and the Complaint and cause of action are dismissed with prejudice on that claim. It is

FURTHER ORDERED that plaintiffs' Motion is granted as to plaintiff Hector L. Bolduc's claims for defamation and for invasion of privacy, and the Clerk of the Court shall enter judgment in favor of plaintiff Hector L. Bolduc and against defendant James Bailey in the amounts of $23,500.00 in actual damages and $23,-500.00 in punitive damages for the defamation claim, and $1.00 in nominal damages for the invasion of privacy claim, for a total judgment of $47,001.00, plus costs upon the filing of a Bill of Costs with the Clerk of the Court within ten days of the date of entry of the judgment.

Defendant is advised that he has 30 days from the date of this Order to appeal, and it is recommended that he obtain legal counsel if he wishes to do so.